**A STOCK COMPANY**



## Evanston Insurance Company

Ten Parkway North
Deerfield, IL 60015

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

*Kathleen Anne Sturgeon*

**Secretary**

**President**

MJIL 1000 08 10

Page 1 of 1

**EXHIBIT C**

**INTERLINE**

**MARKEL®**

# EVANSTON INSURANCE COMPANY

## FLORIDA POLICYHOLDER NOTICE

"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.  PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER."

"**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**"

**EXHIBIT C**



**PUBLIC ENTITY**
POLICY NUMBER: MPEMID0002-16-01

# Evanston Insurance Company
# FORMS SCHEDULE

| FORM NUMBER | FORM NAME |
|---|---|
| 1 MJIL 1000 08 10 | Evanston Jacket |
| MEPE 2700 03 14 | Common Policy Conditions |
| MDPE 2000 03 14 | Public Entities Declarations |
| MEPE 0003 03 14 | Public Entities General Liability Coverage Form |
| MEPE 0006 03 14 | Public Entities Wrongful Acts Liability Coverage Form |
| MEPE 0001 03 14 | (Occurrence) Public Entities Auto Liability Coverage Form |
| MEPE 2217 03 14 | Claim Expenses – In Addition To The Limits of Insurance |
| MEPE 2226 03 14 | Claims Administration |
| MEPE 2303 03 15 | Cap on Losses From Certified Acts of Terrorism |
| MPIL 1007 03 14 | Privacy Notice |
| MEPE 2225 03 14 | Additional Insured – Specified Activities or Operations |
| MEIL 1203 03 12 | Cancellation Notice |
| MEIL 1203 03 12 | Advice of Cancellation to Entities Other Than the Named Insured Endorsement - Aero Lauderdale, Inc |
| MEIL 1203 03 12 | Advice of Cancellation to Entities Other Than the Named Insured Endorsement - State of Florida |
| MEIL 1203 03 12 | Additional Insured - Specified Activities or Operations - State of Florida. |
| MEIL 1203 03 12 | Aviation/watercraft amendment |
| MEIL 1203 03 12 | Remove Fellow Employee |
| MEIL 1203 03 12 | Pollution Amendment |
| MEIL 1203 03 12 | Remove Premium Audit |
| MEIL 1203 03 12 | Unintentional Errors & Omissions Endorsement |
| MEPE 2203 03 14 | Sexual Abuse Acts Coverage Endorsement |
| MPIL 1006-FL 0110 | Florida Policyholder Notice |
| MEPE2202 0314 | Law Enforcement Agencies |
| MEPE2212 0314 | Annual Aggregate Deductible |

**EXHIBIT C**



**PUBLIC ENTITY**

# EVANSTON INSURANCE COMPANY

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions. Words that appear in quotation marks will carry the same definitions as shown in the applicable Coverage Parts attached to this policy.

**A. Bankruptcy**

In the event of bankruptcy, insolvency or receivership of the insured, this policy shall not apply as a replacement of any relevant Self-Insured Retention and our relevant Limit(s) of Insurance will apply only in excess of the relevant Self-Insured Retention as shown in the Declarations.

**B. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation. The first Named Insured's cancellation shall be binding on all other insureds.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**C. Changes**

The policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our prior written consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**D. Conformity To Statutes**

If any term or condition of this policy conflicts with any law or statute of any jurisdiction in which this policy applies, this policy is amended to conform with such law or statute.

**E. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to five years afterward.

**F. First Named Insured**

The first Named Insured is the person, entity or organization shown first in the Declarations. Such person, entity or organization is authorized to act as sole agent for all insureds for:

1. Procuring coverage;

2. Paying premiums;

3. Paying all applicable Self-Insured Retentions;

4. Giving or receiving notice of cancellation or nonrenewal; and

MEPE 2700 03 14         Includes copyrighted material of Insurance Services Office, Inc.,         **Page 1 of 3**
                                                with its permission.

**EXHIBIT C**

    **5.**  Requesting any changes in the policy.

Additionally, any unearned premium due will be paid to the first Named Insured.

**G. Governmental Immunity**

We will not waive, either in the adjustment of claims ("claims") or in the defense of "suits" against the insured, any governmental immunity of the insured.

**H. Inspections And Surveys**

    **1.**  We have the right but are not obligated to:

        **a.**  Make inspections and surveys at any time;

        **b.**  Give you reports on the conditions we find; and

        **c.**  Recommend changes.

    **2.**  We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health and safety of workers or the public. And we do not warrant that conditions:

        **a.**  Are safe or healthful; or

        **b.**  Comply with laws, regulations, codes or standards.

    **3.**  Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

    **4.**  Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**I. Legal Action Against Us**

No person, entity or organization has a right under this policy to:

    **1.**  Join us as a party or otherwise bring us into any claim ("claim") or "suit"; or

    **2.**  Sue us under this policy unless all of its terms have been fully complied with.

A person, entity or organization may sue us to recover for an agreed settlement or for a final judgment against an insured obtained after a contested claim ("claim") or "suit", but we will not be liable for "ultimate net loss" under any Coverage Part that is not payable under the terms of this policy or that is in excess of the applicable Limits of Insurance or within the applicable Self-Insured Retention. We also retain the right to challenge the terms and conditions of any settlement which is not an agreed settlement, including but not limited to whether an insured had a legal obligation to pay damages to the claimant and whether the facts of the claim ("claim") or "suit" underlying the settlement create any obligations under this policy.

An agreed settlement, as used in this condition, means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**J. Premium Audit**

    **1.**  The estimated premium for this policy is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

    **2.**  If this policy is issued for more than one year, the premium for this policy will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**EXHIBIT C**

**K. Representations**

By accepting this policy and as a condition precedent to coverage, you agree that:

1. The information shown in the Declarations is accurate and complete;

2. The information is based upon representations you made to us in your submission or application for this policy;

3. We have issued this policy in reliance upon your representations in the submission or application; and

4. Except as otherwise provided in this policy or by law, this policy is void in any case of fraud or if you conceal or misrepresent any material facts concerning this policy in your submission or application for this policy.

**L. Separation Of Insureds**

Except with respect to the relevant Limits of Insurance, applicable exclusions, and rights or duties specifically assigned to the first Named Insured, this policy applies:

1. As if each Named Insured were the only Named Insured; and

2. Separately to each insured against whom a claim ("claim") or "suit" is brought.

**M. Subrogation – Recovery From Others**

1. If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

2. Any such recovery will be allocated in the following order:

   a. First, to reimburse any insurer for insurance coverage in excess of this policy's applicable Limits of Insurance set forth in the Declarations or any endorsement, or to reimburse the insured to the extent there is no such insurance;

   b. Then, we will be reimbursed for all of our payments under this policy;

   c. Finally, any balance of the recovery which remains after we have been reimbursed will be paid to you.

3. Expenses of all proceedings to recover from anyone liable for loss covered by this policy will be deducted from any amount which has been recovered prior to the allocation in accordance with paragraph **2.** above.

4. If you commence such action with our prior approval and the expenses incurred in obtaining recoveries exceeds the amount recovered, if any, the excess expense shall be apportioned between the parties in proportion to the liability of each party for the loss before the recovery was obtained. If such an action or proceeding undertaken solely by us results in no recovery, we will pay all related expenses.

5. Notwithstanding anything to the contrary in Paragraphs **1.** through **4.** above, in the event we make any payment under this policy, we will waive our right of recovery against any person or organization with whom you have:

   a. A written contract that is effective and executed prior to the date of loss, if such contract requires the insured to waive its subrogation, contribution or indemnity rights; or

   b. Performed or received work under a letter of intent, work order or other letter of understanding, provided that the insured can demonstrate that such letter of intent, work order or other letter of understanding would customarily be reduced to a written contract that requires the insured to waive its subrogation, contribution or indemnity rights.

**N. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our prior written consent.

**O. Two Or More Coverage Parts Or Policies Issued By Us**

When two or more Coverage Parts or policies issued by us or any other insurance company owned or operated by us apply to the same claim ("claim"), "suit", loss ("loss") or damage, the maximum limit of our liability under all such Coverage Parts or policies combined shall not exceed the highest applicable limit of liability under any one Coverage Part or policies among them.

**EXHIBIT C**


**MARKEL**®

**Evanston Insurance Company**

## PUBLIC ENTITIES DECLARATIONS

POLICY NUMBER.: MPEMID0002-16-01

RENEWAL OF POLICY: MPEMID0002-16-00

Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)

BROWARD COUNTY SHERIFF'S OFFICE
2601 WEST BROWARD BLVD
FORT LAUDERDALE, FL 33312

Policy Period: From 10/01/2017 to 10/1/2018 at 12:01 A.M. Standard Time at your mailing address shown above.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**Only the coverages with a Self-Insured Retention and Limits shown are covered by this policy.**

| AUTO LIABILITY | |
|---|---|
| SELF-INSURED RETENTION | $ 500,000 |
| EACH ACCIDENT LIMIT | $ 2,500,000 |

| DATA BREACH AND ELECTRONIC MEDIA LIABILITY | |
|---|---|
| THIS INSURANCE DOES NOT APPLY TO "UNAUTHORIZED ACCESS" OR "POTENTIAL UNAUTHORIZED ACCESS" UNDER COVERAGE A, OR ELECTRONIC MEDIA INJURY UNDER COVERAGE D, WHICH OCCURS BEFORE THE RETROACTIVE DATE SHOWN BELOW. | |
| RETROACTIVE DATE: _____ (COVERAGES A AND D ONLY) | |
| SELF-INSURED RETENTION | $ _____ |
| AGGREGATE LIMIT | $ _____ |
| REGULATORY FINES AGGREGATE LIMIT | $ _____ |
| DATA BREACH AND PRIVACY LIABILITY EACH CLAIM LIMIT | $ _____ |
| DATA BREACH LOSS TO INSURED EACH AUTHORIZED ACCESS LIMIT | $ _____ |
| BREACH MITIGATION EXPENSE EACH UNINTENTIONAL DATA COMPROMISE LIMIT | $ _____ |
| ELECTRONIC MEDIA LIABILITY EACH CLAIM LIMIT | $ _____ |

| GENERAL LIABILITY | |
|---|---|
| SELF-INSURED RETENTION | $ 500,000 |
| AGGREGATE LIMIT | $ 5,000,000 |
| EACH OCCURRENCE LIMIT | $ 2,500,000 |

| PROPERTY | |
|---|---|
| SELF-INSURED RETENTION | $ _____ |
| AGGREGATE LIMIT | $ _____ |
| EACH OCCURRENCE LIMIT | $ _____ |

**EXHIBIT C**

## WRONGFUL ACTS LIABILITY

THIS INSURANCE DOES NOT APPLY TO "WRONGFUL ACTS" WHICH OCCUR BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.

RETROACTIVE DATE: _____ (MEPE XXXX ONLY)

| | |
|---|---|
| SELF-INSURED RETENTION | $ 500,000 |
| AGGREGATE LIMIT | $ 5,000,000 |
| EACH WRONGFUL ACT LIMIT | $ 2,500,000 |

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY

| | |
|---|---|
| SELF-INSURED RETENTION | $ _____ |
| AGGREGATE LIMIT | $ _____ |
| EACH ACCIDENT OR DISEASE LIMIT | $ _____ |
| DESIGNATED STATES: | |
| | |
| EXCLUDED STATES: | |

**Producer Number, Name and Mailing Address**

Marsh USA
1166 Avenue of the Americas
New York, NY
10036

## PREMIUM

| | |
|---|---|
| AUTO LIABILITY | $ 390,000 |
| DATA BREACH AND ELECTRONIC MEDIA LIABILITY | $ _____ |
| GENERAL LIABILITY | $ 507,000 |
| PROPERTY | $ _____ |
| WRONGFUL ACTS LIABILITY | $ 78,000 |
| WORKERS COMPENSATION AND EMPLOYERS LIABILITY | $ _____ |
| TERRORISM | $ 29,250 |
| TOTAL PREMIUM | $ 1,004,250 |

## Endorsements

Forms and Endorsements attached to and made part of this policy at time of issue:

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS MDIL 1001 ATTACHED**

**These Declarations, together with the Coverage Form(s), Common Policy Conditions and any Endorsement(s), complete the above numbered policy.**

Countersigned: September 26, 2017 _____ By: _____
             **DATE**                                    **AUTHORIZED REPRESENTATIVE**

**EXHIBIT C**



INTERLINE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES

CHANGE NUMBER:

| POLICY NUMBER: MPEMID0002-16-01 | POLICY CHANGES EFFECTIVE: 10/01/2017 | COMPANY: Evanston Insurance |
|---|---|---|
| NAMED INSURED: Broward County Sheriff's Office | AUTHORIZED REPRESENTATIVE Robin Russo | |
| COVERAGE PART(S) AFFECTED: PUBLIC ENTITIES GENERAL LIABILTY PUBLIC ENTITIES AUTO LIABILITY PUBLIC ENTITIES WRONGFUL ACTS LIABILITY | | |

### AMENDED LIMITS OF INSURANCE

| GENERAL LIABILITY | |
|---|---|
| SELF-INSURED RETENTION | $500,000 |
| AGGREGATE LIMIT | $5,000,000 |
| EACH OCCURRENCE LIMIT | $2,500,000 |

| AUTO LIABILITY | |
|---|---|
| SELF-INSURED RETENTION | $500,000 |
| EACH OCCURRENCE LIMIT | $2,500,000 |

| WRONGFUL ACTS LIABILITY | |
|---|---|
| SELF-INSURED RETENTION | $500,000 |
| AGGREGATE LIMIT | $5,000,000 |
| EACH OCCURRENCE LIMIT | $2,500,000 |

| EMPLOYMENT PRACTICES LIABILITY | |
|---|---|
| SELF-INSURED RETENTION | $500,000 |
| AGGREGATE LIMIT | $5,000,000 |
| EACH OCCURRENCE LIMIT | $2,500,000 |

All other terms and conditions remain unchanged.

**MEIL 1203 03 12**          Includes copyrighted material of Insurance Services Office, Inc. with its permission.          **Page 1 of 2**

**EXHIBIT C**

| EMPLOYMENT BENEFIT LIABILITY | |
|---|---|
| SELF-INSURED RETENTION | $500,000 |
| AGGREGATE LIMIT | $5,000,000 |
| EACH OCCURRENCE LIMIT | $2,500,000 |

Authorized Signature

All other terms and conditions remain unchanged.

**EXHIBIT C**



**PUBLIC ENTITY**

# EVANSTON INSURANCE COMPANY

## PUBLIC ENTITIES GENERAL LIABILITY COVERAGE FORM

Various Provisions in this Coverage Part restrict coverage.  Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations or Schedule Of Named Insureds.  The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

The words and phrases that appear in quotation marks have a special meaning.  Please refer to Section **VI** – Definitions.

**SECTION I – COVERAGE**

**A.  Insuring Agreement**

1.  We will pay "ultimate net loss" in excess of the Self-Insured Retention that the insured is legally obligated to pay because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

    We will have no obligation under this Coverage Part until:

    a.  The insured's obligation has been determined by a:

        (1)  Judgment against the insured in a "suit"; or

        (2)  Written agreement between you and the claimant or the claimant's legal representative, but only if such written agreement receives our prior written consent; and

    b.  Such judgment or written agreement results in "ultimate net loss" that exceeds the Self-Insured Retention.

    Our obligation to pay "ultimate net loss" in excess of the Self-Insured Retention is limited as described in Section **IV** – Limits Of Insurance.

2.  This insurance applies only to:

    a.  "Bodily injury" or "property damage":

        (1)  Caused by an "occurrence" that takes place in the "coverage territory"; and

        (2)  Which occurs during the policy period.  Provided however, that prior to this policy period, no insured listed under Paragraphs **A., B.1.** or **B.2.** of Section **II** – Who Is An Insured or any "employee" or other person authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or part.  If such listed insured or authorized person knew, prior to this policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after this policy period will be deemed to have been known prior to this policy period; and

    b.  "Personal and advertising injury" caused by an offense arising out of your operations but only if the offense was committed in the "coverage territory" during the policy period.

3.  "Bodily injury" or "property damage" which occurs during this policy period and was not, prior to this policy period, known to have occurred by:

    a.  An insured listed under Paragraphs **A., B.1.** or **B.2.** of Section **II** – Who Is An Insured; or

    b.  Any "employee" or other person authorized by you to give or receive notice of an "occurrence" or claim,

    includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of this policy period.

**EXHIBIT C**

4. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraphs **A.**, **B.1.** or **B.2.** of Section **II** – Who Is An Insured or any "employee" or other person authorized by you to give or receive notice of an "occurrence" or claim:

   a. Reports all or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   b. Receives a written or verbal demand or claim for damages because of "bodily injury" or "property damage"; or

   c. Becomes aware by any other means that "bodily injury" or "property damage" has occurred or had begun to occur.

5. Damages because of "bodily injury" that occurs during the policy period include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**B. Defense Of Claim Or Suit**

1. You have the duty to investigate and defend any claim or "suit" to which this insurance applies and shall be responsible for the payment of any resulting "claim expenses". Defense of any claim or "suit" will be conducted by qualified legal counsel with relevant experience appointed by you with our approval; however, such approval will not be unreasonably denied. All payments for "claim expenses" incurred by you will be applied to the Self-Insured Retention.

2. In no event will you offer or agree to pay any amount in excess of the Self-Insured Retention without our prior written consent. If we recommend to you a settlement amount for any claim or "suit" that exceeds the Self-Insured Retention, you will, in good faith, attempt to settle the claim or "suit" with the claimant or claimant's legal representative at or below the recommended settlement amount.

3. We have no duty to defend any claim or "suit". However, we have the right and you must give us the opportunity to associate in the defense, at our own expense, of any claim or "suit" against any insured because of "bodily injury", "property damage" or "personal and advertising injury" which, in our sole opinion, may exceed the Self-Insured Retention under this Coverage Part.

4. We also have the right, but not the duty, to assume control of the defense, at our own expense, from you of any claim or "suit" which, in our sole opinion, may exceed the Self-Insured Retention under this Coverage Part. This assumption of control includes, but is not limited to:

   a. The investigation of any "occurrence" or offense;

   b. The selection or retention of defense counsel;

   c. The appeal of any judgment; or

   d. The settlement of any claim or "suit".

   Our control of defense or settlement does not amend the Limits of Insurance or Self-Insured Retention.

**C. Exclusions**

This insurance does not apply to:

1. **Abuse Or Molestation**

   "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

   a. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured; or

   b. The negligent:

      **(1)** Employment;

      **(2)** Investigation;

      **(3)** Supervision;

      **(4)** Reporting to the proper authorities, or failure to so report; or

      **(5)** Retention;

      of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **a.** above.

MEPE 0003 03 14                    Includes copyrighted material of Insurance Services Office, Inc.,                    **Page 2 of 17**
                                            with its permission.

**EXHIBIT C**

**2.  Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

    **a.**  "Bodily injury", "property damage" or "personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

    **b.**  Damages, other than damages because of "bodily injury", arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **a.** or **b.** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**3.  Aircraft, Aviation Activities, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, operation, maintenance, use or entrustment to others of any:

    **a.**  Aircraft, airfields, runways, hangars, buildings, or other properties in connection with any aviation activities or airports;

    **b.**  "Auto"; or

    **c.**  Watercraft,

owned or operated by or rented or loaned to any insured.  Use includes "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

    **(1)**  Liability for the premises of airport buildings or other properties to which the general public is admitted;

    **(2)**  A watercraft while ashore on premises you own or rent;

    **(3)**  A watercraft you do not own that is:

        **(a)**  Less than 26 feet long; and

        **(b)**  Not being used to carry persons or property for a charge;

    **(4)**  Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

    **(5)**  Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

    **(6)**  "Bodily injury" or "property damage" arising out of:

        **(a)**  The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

        **(b)**  The operation of any of the machinery or equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

**EXHIBIT C**

4. **Asbestos**

   a. "Bodily injury", "property damage" or "personal and advertising injury" or any injury, loss or damages, including consequential injury, loss or damage, arising out of, caused or contributed to by asbestos:

      (1) Whether arising out of actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, presence of, discharge, dispersal, seepage, migration, infiltration, infestation, release, escape, growth, production or reproduction of or toxic substances from asbestos and/or systemic chemical poisoning. This applies regardless of source, including but not limited to, from any goods, products or structures containing same, existence of same in any form, in occupancy or construction, manufacture, sale, distribution, transportation, handling, storage, disposal or removal of asbestos; and

      (2) Regardless of supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same, or in any way respond to assess the effects of asbestos.

   b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way, responding to, or assessing the effects of asbestos by any insured or by any other person or entity.

Where there is no coverage under this policy, there is no duty to defend.

5. **Communicable Disease**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of the transmission of a communicable disease. This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

   a. Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

   b. Testing for a communicable disease;

   c. Failure to prevent the spread of the disease; or

   d. Failure to report the disease to authorities.

6. **Contractual Liability**

"Bodily injury", "property damage" or "personal and advertising injury" for which the insured is obligated to pay by reason of the assumption of liability in any contract or agreement.  This exclusion does not apply to:

   a. Liability for damages the insured would have in the absence of a contract or agreement; or

   b. Liability for "bodily injury" or "property damage" assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

      (1) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

      (2) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

7. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

8. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   a. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   b. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

**EXHIBIT C**

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

9. **Damage To Property**

"Property damage" to:

a. Property owned, rented or occupied by any insured;

b. Property loaned to any insured;

c. Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises; or

d. Personal property in the care, custody, or control of any insured except:

   (1) Property in the possession of persons at time of arrest or incarceration; or

   (2) Property impounded, held or in bailment at your "parking lot or parking garage".

However, Paragraph **a.** of this exclusion does not apply to "property damage" to property of others which you become legally obligated to pay because of a lease agreement. A separate limit applies to damage to leased premises, as described in Section **IV** – Limits Of Insurance.

10. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

11. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

12. **Electromagnetic Radiation**

a. "Bodily injury", "property damage" or "personal and advertising injury" arising out of electromagnetic radiation, provided that such injury or damage results from or is contributed to by the hazardous properties of electromagnetic radiation; and

b. Any costs for the actual or threatened abatement, mitigation, remediation or removal of any electromagnetic radiation.

14. **Employer's Liability**

"Bodily injury" to:

a. An "employee" of the insured arising out of and in the course of:

   (1) Employment by the insured; or

   (2) Performing duties related to the conduct of the insured's business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

15. **Employment Related Practices**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of any actual or alleged error, misstatement, misleading statement, act or omission, neglect, negligence or breach of duty by an insured against any "employee", former "employee" or applicant for employment with the Named Insured, including but not limited to:

a. Refusal to employ, termination of employment, wrongful demotion, wrongful failure to promote, reassignment, failure to grant tenure or negative evaluation;

b. Wrongful discipline, defamation, humiliation, false arrest, false imprisonment, coercion, libel, slander or invasion of privacy;

c. Hostile work environment, retaliation or discrimination; or

d. Actual or alleged unwelcome or offensive verbal or physical conduct, including sexual molestation or abuse.

**EXHIBIT C**

**16. Errors And Omissions**

Any act, error or omission that results in loss other than "bodily injury", "property damage" or "personal and advertising injury".

**17. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**18. Failure To Supply**

"Bodily injury", "property damage" or "personal and advertising injury" arising from the complete or partial failure to adequately supply gas, oil, water, electricity, steam or sewer utilities or services.

However, this exclusion does not apply if the failure to supply results from the sudden and accidental injury to tangible property owned or used by any insured to procure, produce, process, store or transmit the gas, oil, water, electricity or steam.

**19. Fungi Or Bacteria**

**a.** "Bodily injury", "property damage" or "personal and advertising injury" that would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**20. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**21. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**22. Lead**

**a.** "Bodily injury", "property damage" or "personal and advertising injury" or any injury, loss or damage, including consequential injury, loss or damage, cause or contributed to by lead:

  **(1)** Whether arising out of actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, presence of, discharge, dispersal, seepage, migration, infiltration, infestation, release, escape, growth, production or reproduction of or toxic substances from lead and/or systemic chemical poisoning. This applies regardless of source, including but not limited to, from any goods, products or structures containing same, existence of same in any form, in occupancy or construction, manufacture, sale, distribution, transportation, handling, storage, disposal or removal of lead; and

  **(2)** Regardless of supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same, or in any way respond to assess the effects of lead.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way, responding to, or assessing the effects of lead by any insured or by any other person or entity.

**EXHIBIT C**

Where there is no coverage under this policy, there is no duty to defend.

**23. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**a.** Causing or contributing to the intoxication of any person;

**b.** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**c.** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(1)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(2)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **a.**, **b.** or **c.** above.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**24. Material Published Prior To The Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**25. Material Published With Knowledge Of Its Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**26. Medical Facilities And Services**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of any act, error or omission in connection with:

**a.** The operation of any hospital, nursing home, clinic or other medical or health care facility, including but not limited to:

**(1)** The rendering of or failure to render:

**(a)** Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages; or

**(b)** Any health or therapeutic service, treatment, advice or instruction.

**(2)** The furnishing or dispensing of drugs or medical, dental or surgical supplies or medical supplies and devices; or

**(3)** The handling or treatment of dead bodies, including but not limited to autopsies and harvesting or handling organs for donation; or

**b.** The rendering of or failure to render medical or paramedical services.

However, Paragraph **b.** of this exclusion does not apply to:

**(1)** "Bodily injury" or "property damage" caused, in whole or in part, by loading, unloading or providing assistance to any person into or off of an ambulance or other emergency vehicle;

**(2)** Services performed by a firefighter or any "employee" that is not a medical, oral or surgical doctor, x-ray technician, registered nurse, licensed nurse or nurse practitioner; or

**(3)** Services performed by your employed medical doctor, registered nurse, licensed nurse or nurse practitioner, but only while acting within the course and scope of employment.

**EXHIBIT C**

**27. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**a.** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**b.** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**28. Non-Compensatory Damages**

Any investigation, claim, "suit" or other proceeding seeking relief or redress in any form other than compensatory damages, including but not limited to, costs, fees, or expenses which the insured may become obligated to pay as a result of a consent decree, settlement or adverse judgment for declaratory relief, for injunctive relief or for other equitable relief.

**29. Nuclear Energy Liability**

**a.** "Bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

**(a)** Any person or any organizations required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

**(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

**(3)** Resulting from "hazardous properties" of "nuclear material", if:

**(a)** The "nuclear material":

**(i)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

**(ii)** Has been discharged or dispensed therefrom;

**(b)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(c)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(c)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**b.** As used in this exclusion:

**(1)** "Hazardous properties" includes radioactive, toxic or explosive properties;

**(2)** "Nuclear material" means "source material", "special nuclear material" or "by-products material";

**(3)** "Source material", "special nuclear material" and "by-products material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

**(4)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**(5)** "Waste" means any waste material:

**(a)** Containing "by-products material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" contents, and

**EXHIBIT C**

    **(b)** Resulting from the operation by any person or organization of a "nuclear facility" included within Paragraphs **(6)(a)** and **(6)(b)** below;

**(6)** "Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for:

        **(i)** Separating the isotopes of uranium or plutonium;

        **(ii)** Processing or utilizing "spent fuel"; or

        **(iii)** Handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grains of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**(7)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**(8)** With respect to this exclusion, "property damage" includes all forms of radioactive contamination of property.

**30. Pollution**

  **a.** "Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

However, this paragraph does not apply to:

**(1)** "Bodily injury" or "property damage" caused by heat, smoke or fumes from a hostile fire. Hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be;

**(2)** "Bodily injury" or "property damage" arising out of the unintentional discharge, dispersal, seepage, migration, release or escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from the "mobile equipment" part designed to hold, store or receive them; or

**(3)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured, but only so long as the "bodily injury" was caused by smoke, fumes, vapors or soot from equipment used to heat that building.

**(4)** "Bodily injury" or "property damage" or "personal and advertising injury" arising directly or indirectly out of the use of any of the following chemicals:

    **(a)** Those used for the normal operations of school, including but not limited to those used for laboratories, industrial arts or shop classes, air supplies, maintenance supplies and equipment and health care equipment;

    **(b)** Those used in connection with the installation, service, repair or maintenance of swimming pools, spas or fountains; and

    **(c)** Pesticides, herbicides or other materials mixed with or used in conjunction with the pesticides and herbicides commonly used by pest control operators, lawn and landscaping operations.

  **b.** Any loss, cost or expense arising directly or indirectly out of any:

**EXHIBIT C**

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to or assess the effects of "pollutants"; or

**(2)** Claim or "suit" by or on behalf of a governmental authority or others because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of "pollutants".

**31. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**32. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003,including any amendment of or addition to such law;

**c.** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**d.** Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**33. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**a.** "Your product";

**b.** "Your work"; or

**c.** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**34. Regulation Of Or Control Over Land Use**

"Bodily injury", "property damage", "personal and advertising injury", or any loss, cost or expense arising out of the regulation of or control over any land use, including but not limited to, condemnation, inverse condemnation, adverse possession, dedication by adverse use, disputes involving the application of impact or linkage fees, or takings and partial takings of private property, resulting from the application of a land use, zoning, building, subdivision or similar ordinance or regulation.

**35. Silica Or Silica-Related Dust**

**a.** "Bodily injury" or "personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**EXHIBIT C**

**36. Storm, Waste Water Or Sewage Backup**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of storm, sanitary or waste water, or sewage backup, escape or release.

**37. Subsidence**

"Bodily injury", "property damage" or "personal and advertising injury" arising from subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, or any other land or earth movement, including earthquake.

**38. War**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending any of these.

**39. Workers' Compensation And Similar Laws**

**a.** Any workers compensation, unemployment insurance or disability benefits law, or any similar law; or

**b.** Any obligation of the insured under the Jones Act, general maritime law, the Federal Employers Liability Act, Federal Employee Compensation Act, the Defense Base Act or the U.S. Longshoremen and Harbor Workers Compensation Act.

**40. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**SECTION II – WHO IS AN INSURED**

**A.** You are an insured.

**B.** Each of the following is an insured:

**1.** All persons who were, are now, or shall be your lawfully elected, appointed or employed officials, but only while acting within the scope of their duties as such.

**2.** Current or former commissions, boards or other entities, including their current or former members, under your exclusive operation and jurisdiction, but only while acting within the scope of their duties as such.

**3.** Your "employees", but only while acting within the course and scope of employment.

**4.** All persons who perform a service on a volunteer basis for you, provided such performance is under your direction and control and within the scope and duties as volunteers.  This does not include any person working on retainer or as an independent contractor.

**5.** All persons, entities, or organizations providing service to you under any mutual aid or similar agreement.

**C.** The estate of any person described in Paragraphs **A.** or **B.** above.

**D.** Any person, entity, or any organization while acting as your real estate manager.

**E.** Any person, entity or organization you are required by an "insured contract" to include as an insured, provided the "occurrence" is caused, in whole or in part, by you or your agents or subcontractors acting on your behalf. The coverage afforded to such person, entity or organization only applies to the extent permitted by law and will not be broader than that which you are required by the contract or agreement to provide for such person, entity or organization.  The most we will pay on behalf of such person, entity or organization is the amount of insurance required by the contract or agreement or available under the applicable limits stated in Section **IV** – Limits Of Insurance, whichever is less.  The "insured contract" must be effective and executed prior to the "bodily injury", "property damage" or "personal and advertising injury".

**F.** Any entity or organization you newly acquire or form and over which you have exclusive jurisdiction will qualify as a Named Insured if there is no other similar insurance available to that entity or organization.

**EXHIBIT C**

However:

1. Coverage will end 90 days after you acquire or form the entity or organization or the end of the policy period, whichever is earlier;

2. Coverage does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the entity or organization; and

3. Coverage does not apply to "personal and advertising injury" arising out of an "offense" committed before you acquired or formed the entity or organization.

## SECTION III – SELF-INSURED RETENTION

A. We have no obligation to pay "ultimate net loss" on behalf of the insured until you pay the full amount of the Self-Insured Retention shown in the Declarations.

B. The payment of the Self-Insured Retention may not be satisfied by any other insurance or negated, in whole or part, by any form of immunity from judgment or liability.

C. The Self-Insured Retention applies separately to each and every "occurrence" and offense covered under this Coverage Part.

D. The Self-Insured Retention does not include any amount paid by any insured for claims or "suits" or parts of claims or "suits" brought against any insured for loss for which this Coverage Part does not apply.

E. The Self-Insured Retention does not reduce the Limit of Insurance.

## SECTION IV – LIMITS OF INSURANCE

A. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay under this Coverage Part regardless of the number of:

1. Insureds;

2. Claims made or "suits" brought; or

3. Persons or organizations making claims or bringing "suits".

B. The Aggregate Limit shown in the Declarations is the most we will pay for all "ultimate net loss" under this Coverage Part for all "bodily injury", "property damage" and "personal and advertising injury" arising out of all "occurrences" and offenses during the policy period.

C. Subject to Paragraph **B.** above, the Each Occurrence Limit shown in the Declarations is the most we will pay for "ultimate net loss" under this Coverage Part for all "bodily injury", "property damage" or "personal and advertising expense" arising out of any one "occurrence" or offense.

D. Subject to Paragraph **B.** above, the most we will pay for "ultimate net loss" for damage because of "property damage" to any one leased premises is $1,000,000.

E. The Limits of Insurance apply to "ultimate net loss" in excess of the Self-Insured Retention shown in the Declarations and will not be reduced by the Self-Insured Retention.

F. The Limits of Insurance apply separately to each consecutive annual period, and to any remaining period of less than twelve (12) months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION V – GENERAL LIABILITY CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

A. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

We have no duty under this Coverage Part unless there has been full compliance with the following duties:

1. You must immediately give us notice of any "occurrence", offense, claim or "suit" which:

   a. Appears reasonably likely to involve "ultimate net loss" equal to 50% or more of the Self-Insured Retention; or

   b. Involves any of the following:

   (1) Death, amputation, injury to the spinal cord or multiple fractures;

**EXHIBIT C**

    **(2)** Brain damage or injury, blindness or serious nerve damage;

    **(3)** Internal injuries to a body organ or burns in the second or third degree;

    **(4)** Class actions or putative class actions;

    **(5)** Any claim requesting the indemnification of another party; or

    **(6)** Any claim seeking punitive or exemplary damages.

**2.** Notice must include:

    **a.** How, when, and where the "occurrence" or offense occurred;

    **b.** The insured's name and address; and

    **c.** To the extent possible, the names and addresses of any injured persons and witnesses.

You and any other involved insured must record the specifics of the claim or "suit", including any demands, notices, summonses, legal papers and the date received.

**3.** If we exercise our right to associate in or assume control of the defense of a claim or "suit" as provided in Section **I,** Paragraph **B. Defense Of Claim Or Suit** of this Coverage Part, you and any other insured involved in such claim or "suit" must:

    **a.** Authorize us to obtain records and other information;

    **b.** Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

    **c.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this Coverage Part may also apply.

**B. Other Insurance**

**1.** The insurance provided by this Coverage Part is excess over the Self-Insured Retention for this Coverage Part, and over any other insurance, deductibles, retention or self-insurance, whether written on a primary, excess, contingent or any other basis, except for other insurance that is specifically purchased by you to apply in excess of this Coverage Part's applicable Limit of Insurance.

**2.** If any other insurance purchased by you or on your behalf is deemed to apply on the same excess basis as this Coverage Part, our obligation, subject to the applicable Self-Insured Retention and Limit of Insurance of this Coverage Part, will be shared with such other insurance by the method described in Paragraphs **3.** and **4.** below.

**3.** If such other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid for its applicable limit of insurance or none of the loss remains, whichever comes first.

**4.** If such other insurance does not permit contribution by equal shares, we will pay by limits. Under this method, each insurer's share is based on the ratio of its applicable limit(s) of insurance to the total applicable limits of insurance of all such insurers.

**5.** We have no obligation to pay any expenses incurred by such other insurers.

**SECTION VI – DEFINITIONS**

**A.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purpose of this definition:

**1.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**2.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purpose of attracting customers or supporters are considered an "advertisement".

**B.** "Auto" means:

**1.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**EXHIBIT C**

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness, disease, shock, fright, mental injury or anguish, emotional distress or disability sustained by any person, including death resulting from any of these.

**D.** "Claim expenses" means reasonable amounts for defense of an insured against a specific claim or "suit" to which this Coverage Part applies, including:

   **1.** Costs incurred by you in connection with the investigation, adjustment, settlement or defense of any claim or "suit";

   **2.** Legal expenses; and

   **3.** Litigation costs, including but not limited to "pre-judgment interest" and "post-judgment interest" as required by law on awards and judgments, and the cost of bonds to release attachments or to appeal a claim or "suit".

"Claim expenses" also includes reasonable attorney fees and necessary litigation expenses incurred which are your obligation under an "insured contract" in the defense of an indemnitee or incurred by an indemnitee at your request.

"Claim expenses" does not include salaries or expenses of any insured (including affiliate or subsidiary organizations of any insured), annual retainers, overhead or any fees paid for claim administration.

**E.** "Coverage territory" means anywhere in the world if the insured's responsibility to pay "ultimate net loss" is determined in a "suit" on the merits brought in the United States of America (including its territories and possessions), Puerto Rico or Canada.

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

**H.** "Impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

   **1.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **2.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**I.** "Insured contract":

   **1.** Means:

     **a.** A lease of premises;

     **b.** A sidetrack agreement;

     **c.** Any easement or license agreement, except in connection with vehicle or pedestrian private railroad crossings at grade;

     **d.** A mutual aid assistance agreement or contract between political subdivisions;

     **e.** An elevator maintenance agreement; or

     **f.** That part of any other contract or agreement pertaining to your operations under which you assume the tort liability of another because of "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused in whole or in part, by you or your agents or subcontractors acting on your behalf, and the contract or agreement is made prior to the "bodily injury" or "property damage". Tort liability means liability that would be imposed by law for injury or damage to persons or property in the absence of any contract or agreement.

   **2.** Does not include that part of any contract or agreement:

     **a.** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

       **(1)** Preparing, approving, or failing to prepare or approve, maps, drawings, opinions, reports, surveys, field orders, change orders, designs or specifications; or

       **(2)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**EXHIBIT C**

    **b.** Under which the insured, if an architect, engineer, or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including but not limited to, those listed in Paragraph **a.** above and supervisory, inspection, architectural or engineering activities; or

    **c.** That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

**J.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your operations. "Leased worker" does not include a "temporary worker".

**K.** "Loading or unloading" means the handling of property:

    **1.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **2.** While it is in or on an aircraft, watercraft or "auto"; or

    **3.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered.

    "Loading or unloading" does not include:

    **a.** The movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto"; or

    **b.** Loading, unloading or providing assistance to any person into or off of an ambulance or other emergency vehicle.

**L.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **2.** Vehicles maintained for use solely on or next to premises you own or rent;

    **3.** Vehicles that travel on crawler treads;

    **4.** Vehicles whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **a.** Power cranes, shovels, loaders, diggers or drills; or

        **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **5.** Vehicles not described in **1.**, **2.**, **3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **b.** Cherry pickers and similar devices used to raise or lower workers;

    **6.** Vehicles not described in **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo.  However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        **a.** Equipment designed primarily for:

            **(1)** Snow removal;

            **(2)** Road maintenance, but not construction or resurfacing; or

            **(3)** Street cleaning;

        **b.** Cherry pickers and similar devices mounted on automobiles or truck chassis and used to raise or lower workers; and

        **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

    However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**M.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**EXHIBIT C**

**N.** "Parking lot or parking garage" means:

    **1.** Those areas you own and operate that are used by the general public, including your "employees", to park "autos" or "mobile equipment" whether or not a fee is charged; and

    **2.** Those areas where you, or an insured on your behalf, are exercising physical control over such "autos" or "mobile equipment" or otherwise where your legal liability has been established.

**O.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses from the conduct of your operations:

    **1.** False arrest, detention or imprisonment;

    **2.** Malicious prosecution;

    **3.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **4.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **5.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **6.** The use of another's advertising idea in your "advertisement"; or

    **7.** Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

**P.** "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

**Q.** "Post-judgment interest" means interest on the full amount of any settlement, verdict, award or judgment that accrues after entry of the settlement, verdict, award or judgment.

**R.** "Pre-judgment interest" means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment whether or not made part of the settlement, verdict, award or judgment.

**S.** "Products-completed operations hazard":

    **1.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **a.** Products that are still in your physical possession; or

        **b.** Work that has not yet been completed or abandoned. "Your work" will be deemed completed at the earliest of the following times:

            **(1)** When all of the work called for in your contract has been completed.

            **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one job site.

            **(3)** When the part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **2.** Does not include "bodily injury" or "property damage" arising out of:

        **a.** The transportation of property unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

        **b.** The existence of tools, uninstalled equipment or abandoned or unused materials.

**T.** "Property damage" means:

    **1.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**EXHIBIT C**

   **2.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**U.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**V.** "Silica-related dust" means a mixture or combination of "silica" and other dust or particles.

**W.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury", to which the Coverage Part applies, are alleged. "Suit" includes:

   **1.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit; or

   **2.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits.

**X.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**Y.** "Ultimate net loss" means the total amount of damages and "claim expenses", including any attorney fees awarded in favor of third parties that the insured is legally liable to pay because of "bodily injury", "property damage" or "personal and advertising injury".

**Z.** "Your product":

   **1.** Means:

      **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         **(1)** You;

         **(2)** Others trading under your name; or

         **(3)** A person or organization whose business or assets you have acquired; and

      **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **2.** Includes:

      **a.** Its design, formulation, construction or manufacture;

      **b.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      **c.** The providing of or failure to provide warnings or instructions.

   **3.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**AA.** "Your work":

   **1.** Means:

      **a.** Work or operations performed by you or on your behalf; and

      **b.** Materials, parts or equipment furnished in connection with such work or operations.

   **2.** Includes:

      **a.** Design, formulation or construction;

      **b.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      **c.** The providing of or failure to provide warnings or instructions.

**EXHIBIT C**



**PUBLIC ENTITY**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LAW ENFORCEMENT AGENCIES

This endorsement modifies insurance provided under the following:

PUBLIC ENTITIES GENERAL LIABILITY COVERAGE FORM

The following changes apply only with respect to your law enforcement agency operations:

**A.** Paragraph **C. Exclusions** under Section **I – Coverage** is amended as follows:

    **1.** Exclusion **3. Aircraft, Aviation Activities, Auto Or Watercraft Coverage** does not apply to "autos", aircraft or watercraft being impounded or seized in the course of your law enforcement activities.

    **2.** Exclusion **7.** is replaced by the following:

        **7. Criminal Acts**

        "Bodily injury", "property damage" or "personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

    **3.** Paragraph **d.(2)** of Exclusion **9. Damage To Property** is replaced by the following:

        **(2)** Property impounded, held or in bailment at your "police impound lot" or "parking lot or parking garage".

    **4.** Exclusion **17. Expected Or Intended Injury** does not apply to an act of the insured in the arrest, detention or incarceration of any person, unless such act is deemed to be a criminal act.

**B.** Paragraph **B.3.** under Section **II – Who Is An Insured** is replaced by the following:

    **3.** Your "employees", but only while acting within the course and scope of employment by you, or while performing security services for a person or entity other than you, provided you have authorized such "employee" to perform these security services.

**C.** Section **VI – Definitions** is amended as follows:

    **1.** Definition **I. "Insured contract"** is amended to include a law enforcement service agreement for anyone other than you, provided such agreement has received your departmental approval.

    **2.** Definition **O. "Personal and advertising injury"** is replaced by the following:

        **O.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses from the conduct of your operations:

        **1.** False arrest, detention or imprisonment;

        **2.** Malicious prosecution;

        **3.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

        **4.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

        **5.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**EXHIBIT C**

6.  The use of another's advertising idea in your "advertisement";

7.  Infringing upon another's copyright, trade dress or slogan in your "advertisement";

8.  Assault and battery;

9.  Violation of civil rights;

10. Violation of property rights;

11. Erroneous service of process; or

12. Failure of your agency or "employees" to follow departmentally approved policies or procedures.

3.  The following definition is added:

"Police impound lot" means those locations you own or operate for the storage of "autos", aircraft, watercraft or "mobile equipment" that the insured seizes pursuant to law, and that portion of the roads or on the ways adjacent to these locations.

All other terms and conditions remain unchanged.

**EXHIBIT C**



**PUBLIC ENTITY**

# EVANSTON INSURANCE COMPANY

## PUBLIC ENTITIES WRONGFUL ACTS
## LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict coverage.  Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations or Schedule Of Named Insureds. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

The words and phrases that appear in quotation marks have special meaning. Please refer to Section **VI** – Definitions.

**SECTION I – COVERAGE**

**A.  Insuring Agreement**

1.  We will pay "ultimate net loss", in excess of the Self-Insured Retention, that the insured is legally obligated to pay because of an "employee benefits liability wrongful act", "employment-related practices liability wrongful act" or "other wrongful act" of the insured or any other person for whose acts the insured is legally liable, to which this insurance applies.

    We will have no obligation under this Coverage Part until:

    **a.**  The insured's obligation has been determined by a:

    **(1)**  Judgment against the insured in a "suit"; or

    **(2)**  Written agreement between you and the claimant or the claimant's legal representative, but only if such written agreement receives our prior written consent; and

    **b.**  Such judgment or written agreement results in "ultimate net loss" that exceeds the Self-Insured Retention.

    Our obligation to pay "ultimate net loss" in excess of the Self-Insured Retention is limited as described in Section **IV** – Limits Of Insurance.

2.  This insurance applies only if:

    **a.**  The "wrongful act" takes place in the "coverage territory"; and

    **b.**  The "wrongful act" occurs during the policy period.  Provided; however, that prior to this policy period, no insured listed under Paragraphs **A.**, **B.1.** or **B.2.** of Section **II** – Who Is An Insured or any "employee" or other person authorized by you to give or receive notice of a "wrongful act" or "claim", knew that the "wrongful act" had occurred, in whole or part. If such listed insured or authorized person knew, prior to this policy period, that the "wrongful act" occurred, then any continuation, change or resumption of such "wrongful act" during or after this policy period will be deemed to have been known prior to this policy period.

3.  A "wrongful act" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of a "wrongful act" or "claim", includes any continuation, change or resumption of that "wrongful act" after the end of the policy period.

4.  A "wrongful act" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of a "wrongful act" or "claim":

    **a.**  Reports the "wrongful act" to us or any other insurer; or

    **b.**  Receives a written or verbal demand or "claim" because of the "wrongful act"; or

MEPE 0006 03 14          Includes copyrighted material of Insurance Services Office, Inc.,          Page 1 of 13
                                              with its permission.

**EXHIBIT C**

    **c.** Becomes aware by any other means that the "wrongful act" has occurred.

**B. Defense Of Claim Or Suit**

    **1.** You have the duty to investigate and defend any "claim" or "suit" to which this insurance applies and shall be responsible for the payment of any resulting "claim expenses". Defense of any "claim" or "suit" will be conducted by qualified legal counsel with relevant experience appointed by you with our approval; however, such approval will not be unreasonably denied. All payments for "claim expenses" incurred by you will be applied to the Self-Insured Retention.

    **2.** In no event will you offer or agree to pay any amount in excess of the Self-Insured Retention without our prior written consent. If we recommend to you a settlement amount for any "claim" or "suit" that exceeds the Self-Insured Retention, you will, in good faith, attempt to settle the "claim" or "suit" with the claimant or claimant's legal representative at or below the recommended settlement amount.

    **3.** We have no duty to defend any "claim" or "suit". However, we have the right and you must give us the opportunity to associate in the defense, at our own expense, of any "claim" or "suit" against any insured because of an actual or alleged "wrongful act" which, in our sole opinion, may exceed the Self-Insured Retention under this Coverage Part.

    **4.** We also have the right, but not the duty, to assume control of the defense, at our own expense, from you of any "claim" or "suit" which, in our sole opinion, may exceed the Self-Insured Retention under this Coverage Part.  This assumption of control includes, but is not limited to:

        **a.** The investigation of any "wrongful act";

        **b.** The selection or retention of defense counsel;

        **c.** The appeal of any judgment; or

        **d.** The settlement of any "claim" or "suit".

    Our control of defense or settlement does not amend the Limits of Insurance or Self-Insured Retention.

**C. Exclusions**

    **1. Exclusions Applicable To All Wrongful Acts**

    This insurance does not apply to:

        **a. Abuse Or Molestation**

        Damage arising out of:

        **(1)** The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured; or

        **(2)** The negligent:

            **(a)** Employment;

            **(b)** Investigation;

            **(c)** Supervision;

            **(d)** Reporting to the proper authorities or failure to so report; or

            **(e)** Retention;

        of a person for whom the insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **(1)** above.

        **b. Asbestos**

        Loss, cost or expense arising out of:

        **(1)** The use of, sale of, installation of, removal of, remediation of, abatement of, distribution of, containment of, or exposure to asbestos, asbestos products, asbestos-containing material, asbestos fibers, or asbestos dust;

        **(2)** The actual or threatened abatement, mitigation, removal, remediation, or disposal of asbestos, asbestos products, asbestos-containing material, asbestos fibers, or asbestos dust;

**EXHIBIT C**

    **(3)** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with subparagraphs **(1)** and **(2)** above; or

    **(4)** Any obligation of the insured to indemnify or contribute with any party in connection with subparagraphs **(1)**, **(2)** or **(3)** above.

**c. Bodily Injury, Property Damage Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**d. Contractual Liability**

Any obligation of the insured to pay damages by reason of the assumption of liability in a contract or agreement, including but not limited to:

    **(1)** The failure, refusal. or inability of the insured to enter into, renew or perform any contract or agreement, including any expressed or implied employment contract or collective bargaining agreement; and

    **(2)** Any contract or agreement related to construction, architectural or engineering services or any other contract for purchase of goods or services.

This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**e. Data Breach**

Damage arising out access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described above.

**f. Electromagnetic Radiation**

Loss, cost or expense arising out of electromagnetic radiation, provided that such loss, cost or expense results from or is contributed to by the hazardous properties of electromagnetic radiation, including any costs for the actual or threatened abatement, mitigation, remediation or removal of electromagnetic radiation.

**g. Failure To Maintain Insurance**

Loss arising out of any insured's failure to effect, adequately purchase or maintain any insurance, bond or self-insurance fund.

**h. Fraud**

Damage arising out of any intentional, dishonest, fraudulent, criminal or malicious "wrongful act", committed by any insured, including willful or reckless violation of any statute.

The actual or alleged conduct of any insured shall not be imputed to any other insured for the applicability of this exclusion.

**i. Fungus**

Loss, cost or expense arising out of:

    **(1)** Any "fungus" or spores;

    **(2)** Any solid, liquid, vapor, or gas produced by or arising out of any "fungus" or spores;

    **(3)** Any material, product, building component, or building structure that contains, harbors, nurtures or acts as a medium for any "fungus" or spores;

    **(4)** Any intrusion, leakage, or accumulation of water or any other liquid that contains, harbors, nurtures or acts as a medium for "fungus" or spores;

    **(5)** The actual or threatened abatement, mitigation, remediation, removal or disposal of "fungus" or spores or any material, product, building component, or building structure that contains, harbors, nurtures or acts as a medium for any "fungus" or spores;

**EXHIBIT C**

(6) Any supervision, instructions, recommendations, warning or advice given or which should have been given in connection with subparagraphs **(1)** through **(5)** above; or

(7) Any obligation of the insured to indemnify or contribute with any party in connection with subparagraphs **(1)** through **(6)** above.

**j.   Infringement Of Intellectual Property Rights**

Damage arising out of any infringement of copyright, patent, trademark, trade dress, trade secret, title, slogan or other intellectual property rights.

**k.   Insured Versus Insured**

Any "claim" or other proceeding:

(1) By or on behalf of any insured, whether directly or derivatively, against any other insured; or

(2) By the spouse, child, parent, brother or sister of any insured for consequential damage as a result of any damage to any insured.

This exclusion does not apply to "loss" arising out of any "employment-related practices wrongful act".

**l.   Law Enforcement Activities**

Loss arising out of any insured's law enforcement activities, including the operation of detention facilities.  This exclusion does not apply to loss arising out of any "employment-related practices wrongful act".

**m.  Lead**

Loss, cost or expense arising out of:

(1) The toxic or pathological properties of lead, lead compounds or lead contained in any materials;

(2) The actual or threatened abatement, mitigation, remediation, removal or disposal of lead, lead compounds or materials containing lead;

(3) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with subparagraphs **(1)** or **(2)** above; or

(4) Any obligation of the insured to indemnify or contribute with any party in connection with subparagraphs **(1)**, **(2)** or **(3)** above.

**n.   Medical Professional Services**

Damage arising out of the rendering of or failure to render any service by anyone engaged in the practice of medicine, including but not limited to, physicians, surgeons, osteopaths, chiropractors, anesthesiologists, dentists, psychiatrists, psychologists, nurses, paramedics, emergency medical technicians, first-aid attendants or pharmacists.

This exclusion applies to services provided by you, any insured and anyone else for whose acts you are legally liable.

**o.   Money And Securities**

Loss arising out of the destruction, theft, conversion or disappearance of any money or securities including the loss of use thereof.

**p.   Non-Compensatory Damages**

Loss arising out of any investigation, "claim", or other proceeding seeking relief or redress in any form other than compensatory damages, including but not limited to, costs, fees, or expenses which the insured may become obligated to pay as a result of a consent decree, settlement or adverse judgment for declaratory relief, injunctive relief or other equitable relief.

**q.   Nuclear Energy Liability**

Damage:

**EXHIBIT C**

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which

    **(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

    **(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**(3)** Resulting from "hazardous properties" of "nuclear material", if:

    **(a)** The "nuclear material":

        **(i)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

        **(ii)** Has been discharged or dispersed therefrom;

    **(b)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    **(c)** The damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(c)** applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

**(1)** "Hazardous properties" includes radioactive, toxic or explosive properties.

**(2)** "Nuclear material" means "source material", "special nuclear material" or "by-product material".

**(3)** "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**(4)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

**(5)** "Waste" means any waste material:

    **(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

    **(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

**(6)** "Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for:

        **(i)** Separating the isotopes of uranium or plutonium;

        **(ii)** Processing or utilizing "spent fuel"; or

        **(iii)** Handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

**EXHIBIT C**

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**(7)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**(8)** "Property damage" includes all forms of radioactive contamination of property.

**r. Pollution**

**(1)** Damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Loss, costs or expenses arising directly or indirectly out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, remediate, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants";

**(b)** "Claim" by or on behalf of a governmental authority or others because of testing for, monitoring, cleaning up, removing, remediating, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants"; or

**(c)** Insured's failure to comply with, enforce or enact any rule, ordinance, law or regulation having to do with the prevention, mitigation, monitoring, clean up, removal, containment, treatment, detoxification, neutralization, or assessment of the effects of "pollutants".

**s. Previously Reported Claim Or Wrongful Act**

Any "claim" or "wrongful act" that is the subject of any notice given under a policy which has expired prior to the inception date of this policy.

**t. Regulation Of Or Control Over Land Use**

Loss arising out of the regulation of or control over any land use, including but not limited to, condemnation, inverse condemnation, adverse possession, dedication by adverse use, disputes involving the application of impact or linkage fees, or takings and partial takings of private property, resulting from the application of a land use, zoning, building, subdivision or similar ordinance or regulation.

**u. Silica Or Silica-Related Dust**

Loss, cost or expense arising out of:

**(1)** The actual, alleged, threatened or suspected use of, inhalation of, contact with, exposure to, existence of, or presence of "silica" or "silica-related dust";

**(2)** Any loss, cost or expense arising, in whole or in part, out of any

**(a)** "Claim" or suit by or on behalf of any governmental authority or any other alleged responsible party because of "silica" or "silica-related dust"; or

**(b)** Request, demand, order or statutory or regulatory requirement that any insured or any other person or entity should be responsible for:

**(i)** Assessing the presence, absence or amount or effects of "silica" or "silica-related dust";

**(ii)** Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, neutralizing, treating, detoxifying, remediating, neutralizing, abating, disposing of or mitigating "silica"; or

**(iii)** Responding to "silica" or "silica-related dust" in any way other than as described in **(b)(i)** and **(ii)** above;

**(3)** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with subparagraphs a. or b. above; or

**(4)** Any obligation of the insured to indemnify or contribute with any party in connection with subparagraphs **(1)**, **(2)**, or **(3)** above.

**v. Unlawful Gain**

**EXHIBIT C**

Loss arising out of or attributable to the insured gaining any profit, advantage, or remuneration to which the insured is not entitled. The actual or alleged conduct of any insured shall not be imputed to any other insured for the applicability of this exclusion.

**w. Workers' Compensation**

**(1)** With respect to any "employment-related practices wrongful act" or "other wrongful act", any obligation of the insured under a workers compensation, unemployment or similar laws.

**(2)** With respect to an "employee benefits liability wrongful act", any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**2. Exclusions Applicable To Employee Benefits Liability Wrongful Acts**

Solely with regard to "employee benefits liability wrongful acts", this insurance does not apply to:

**a. Discrimination In Administration Of Employee Benefit Program**

"Claims" arising out of actual or alleged discrimination with respect to the "administration" of the insured's "employee benefit program", including but not limited to discrimination based on race or national origin, color, marital status, religion or creed, age, gender, sexual orientation, handicap, pregnancy, physical disability, military status, or other employment practices whether or not any of the foregoing violated any federal, state or local governmental or regulation prohibiting such discrimination.

**b. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by an insurer.

**d. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**e. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**f. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**3. Exclusions Applicable To Employment-Related Practices Wrongful Acts**

Solely with regard to "employment-related practices wrongful acts", this insurance does not apply to any of the following:

**a. Future Pay**

Any "claim" for advance or future pay, including advance or future damages or any other future economic relief or the equivalent thereof which compensates an "employee" for damages beyond the date of settlement or adjudication.

This exclusion applies only if the insured is legally responsible or has the option pursuant to a judgment, mediation or arbitration to reinstate the "employee" but fails to do so.

**b. Strikes And Lockouts**

Any "claim" based upon, attributable to, or arising out of any striking or locked-out "employee", or to an

**EXHIBIT C**

"employee" who has been temporarily or permanently replaced due to any labor dispute.

**c.  Violation Of Laws Applicable To Employers**

A violation of your responsibilities or duties required by any other federal, state or local statutes, rules or regulations, and any rules or regulations promulgated therefor or amendments thereto, except for the following, and including amendments thereto: Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Equal Pay Act, the Pregnancy Discrimination Act of 1978, the Immigration Reform Control Act of 1986, the Family and Medical Leave Act of 1993 and the Genetic Information Nondiscrimination Act of 2008 or any other similar state or local statutes, rules or regulations to the extent that they prescribe responsibilities or duties concerning the same acts or omissions.

However, this insurance does not apply to an "employment-related practices wrongful act" arising out of your failure to comply with any of the accommodations for the disabled required of you by, or any expenses incurred as the result of physical modifications made to accommodate any person pursuant to, the Americans With Disabilities Act, or any amendments thereto, or any similar state or local statutes, rules or regulations to the extent that they prescribe responsibilities or duties concerning the same acts or omissions.

This exclusion does not apply to any "claim" for retaliatory treatment by an insured against any person making a "claim" pursuant to such person's rights under any statute, rule or regulation.

## SECTION II – WHO IS AN INSURED

**A.**  You are an insured.

**B.**  Each of the following is an insured:

1.  All persons who were, are now, or shall be your lawfully elected, appointed or employed officials, but only while acting within the scope of their duties as such.

2.  Current or former commissions, boards or other entities, including their current or former members, under your exclusive operation and jurisdiction, but only while acting within the scope of their duties as such. However, this does not include any person, entity or organization listed in Paragraph **D.** below.

3.  All of your current or former "employees", but only while acting within the course and scope of employment.

4.  All persons who perform a service on a volunteer basis for you, provided such performance is under your direction and control and within the scope and duties as volunteers. This does not include any person working on retainer or an independent contractor.

5.  All persons, entities, or organizations providing service to you under any mutual aid or similar agreement.

**C.**  The estate of any person described in Paragraphs **A.** or **B.** above.

**D.**  Any entity or organization you newly acquire or form and over which you have exclusive jurisdiction will qualify as a Named Insured if there is no other similar insurance available to that entity or organization.

However:

1.  Coverage will end 90 days after you acquire or form the entity or organization or the end of the policy period, whichever is earlier; and

2.  Coverage does not apply to any "wrongful act" committed before you acquired or formed the entity or organization.

**E.**  No person, entity, or organization is an insured with respect to any of the following boards, commissions or entities:

1.  Airports;

2.  Transit authorities;

3.  Hospitals, nursing homes, clinics or other similar health facilities; or

4.  Port authorities.

## SECTION III – SELF-INSURED RETENTION

**A.**  We have no obligation to pay "ultimate net loss" on behalf of the insured until you pay the full amount of the Self-Insured Retention shown in the Declarations.

**B.**  The payment of the Self-Insured Retention may not be satisfied by any other insurance or negated, in whole or part, by any form of immunity from judgment or liability.

**EXHIBIT C**

**C.** The Self-Insured Retention applies separately to each and every "wrongful act" under this Coverage Part.

**D.** The Self-Insured Retention does not include any amount paid by any insured for "claims" or "suits" or parts of "claims" or "suits" brought against any insured for loss for which this Coverage Part does not apply.

**E.** The Self-Insured Retention does not reduce the Limit of Insurance.

## SECTION IV – LIMITS OF INSURANCE

**A.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay under this Coverage Part regardless of the number of:

    **1.** Insureds;

    **2.** "Claims" made or "suits" brought; or

    **3.** Persons or organizations making "claims" or bringing "suits".

**B.** The Aggregate Limit shown in the Declarations is the most we pay for all "ultimate net loss" under this Coverage Part for all "wrongful act" during the policy period.

**C.** Subject to Paragraph **B.**, the Each Wrongful Act Limit shown in the Declarations is the most we will pay for "ultimate net loss" under this Coverage Part for any one "claim".

**D.** The Limits of Insurance apply to "ultimate net loss" in excess of the Self-Insured Retention shown in the Declarations and will not be reduced by the Self-Insured Retention.

**E.** The Limits of Insurance apply separately to each consecutive annual period, and to any remaining period of less than twelve (12) months, starting with the beginning of the policy period shown in the Declarations unless the policy period is extended after issuance for an additional period of less than twelve (12) months.  In that case, the additional period will be deemed part of the last preceding annual period for purposes of determining the Limits of Insurance.

**F.** The coverage provided by this Coverage Part does not provide any duplication or overlap of coverage for the same "claim" or "suit". Two or more "claims" arising out of a single "wrongful act" or a series of related "wrongful acts" shall be treated as a single "claim". All such "claims", whenever made, shall be considered to be first made on the date on which the earliest "claim" arising out of such "wrongful act" was first made. All such "claims" are subject to the same Self-Insured Retention and Limit of Insurance. All "claims" arising out of one "wrongful act" to the same person by one or more insured shall be deemed to be one "claim" and to have been made at the time the first of those "claims" is made against any insured.

## SECTION V – WRONGFUL ACTS LIABILITY CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A.  Duties In The Event Of A Wrongful Act, Claim Or Suit**

    We have no duty under this Coverage Part unless there has been full compliance with the following duties:

    **1.** You must immediately give us notice of any "wrongful act", "claim" or "suit" which:

        **a.** Appears reasonably likely to involve "ultimate net loss" equal to 50% or more of the Self-Insured Retention; or

        **b.** Involves any of the following:

            **(1)** Class actions or putative class actions;

            **(2)** Any claim requesting the indemnification of another party; or

            **(3)** Any claim seeking punitive or exemplary damages.

    **2.** Notice must include:

        **a.** How, when, and where the "wrongful act" occurred;

        **b.** The insured's name and address; and

        **c.** To the extent possible, the names and addresses of any involved persons and witnesses.

    You and any other involved insured must record the specifics of the "claim" or "suit", including any demands, notices, summonses, legal papers and the date received.

**EXHIBIT C**

3. If we exercise our right to associate in or assume control of the defense of a "claim" or "suit" as provided in Section I, Paragraph **B. Defense Of Claim Or Suit** of this Coverage Part, you and any other insured involved in such "claim" or "suit" must:

   a. Authorize us to obtain records and other information;

   b. Cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

   c. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of damage to which this Coverage Part may also apply.

**B. Other Insurance**

1. The insurance provided by this Coverage Part is excess over the Self-Insured Retention for this Coverage Part, and over any other insurance, deductibles, retention or self-insurance, whether written on a primary, excess, contingent or any other basis, except for other insurance that is specifically purchased by you to apply in excess of this Coverage Part's applicable Limit of Insurance.

2. If any other insurance purchased by you or on your behalf is deemed to apply on the same excess basis as this Coverage Part, our obligation, subject to the applicable Self-Insured Retention and Limit of Insurance of this Coverage Part, will be shared with such other insurance by the method described in Paragraphs **3.** and **4.** below.

3. If such other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid for its applicable limit of insurance or none of the loss remains, whichever comes first.

4. If such other insurance does not permit contribution by equal shares, we will pay by limits. Under this method, each insurer's share is based on the ratio of its applicable limit(s) of insurance to the total applicable limits of insurance of all such insurers.

5. We have no obligation to pay any expenses incurred by such other insurers.

## SECTION VI – DEFINITIONS

**A.** "Administration" means:

1. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for any "employee benefit program";

2. Handling of records in connection with "employee benefit program"; or

3. Effecting, continuing or terminating any "employee" participation in any benefit included in the "employee benefit program", but this does not include the actual effecting, continuing or terminating of such "employee benefit program" which shall be deemed to be a fiduciary act;

provided that all such "administration" is performed by a person authorized by the insured.

However, "administration" does not include handling payroll deductions.

**B.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purpose of this definition:

1. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. Regarding web sites, only that part of a web site that is about your goods, products or services for the purpose of attracting customers or supporters are considered to be "advertisements".

**C.** "Bodily injury" means bodily injury, sickness, disease, shock, fright, mental injury or anguish, emotional distress or disability sustained by a person, including death resulting from any of these.

**D.** "Cafeteria plan" means plans authorized by applicable law to allow "employees" to elect to pay for certain benefits with pre-tax dollars.

**E.** "Claim" means a request or demand received by the insured or by us for money or services, including but not limited to the institution of "suit" or arbitration proceedings against the insured, seeking damages arising from an actual or alleged "wrongful act".

**F.** "Claim expenses" means reasonable amounts for defense of an insured against a specific "claim" or "suit" to which this Coverage Part applies, including:

**EXHIBIT C**

1. Costs incurred by you in connection with the investigation, adjustment, settlement or defense of any "claim" or "suit";

2. Legal expenses; and

3. Litigation costs, including but not limited to "pre-judgment interest" and "post-judgment interest" as required by law on awards and judgments, and the cost of bonds to release attachments or to appeal a "claim" or "suit".

"Claim expenses" do not include salaries or expenses of any insured (including affiliate or subsidiary organizations of any insured), annual retainers, overhead or any fees paid for claim administration.

G. "Coverage territory" means anywhere in the world if the insured's responsibility to pay "ultimate net loss" is determined in a "suit" on the merits brought in the United States of America (including its territories and possessions), Puerto Rico or Canada.

H. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

I. "Employee benefits liability wrongful act" means any negligent act, error, omission, misstatement, misleading statement or breach of duty in the "administration" of an "employee benefit program", by you or any other insured while acting solely within the course and scope of employment by you.

J. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

1. Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

2. Profit sharing plans, "employee" savings plans, "employee" stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

3. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

4. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

5. Any other similar benefits.

K. "Employment-related practices wrongful act" means any act, error, omission, misstatement or misleading statement, neglect, negligence or breach of duty by an insured against your present or former "employee", or your applicant for employment, including but not limited to:

1. Wrongful demotion or failure to promote;

2. Violation of employment discrimination laws;

3. Wrongful refusal to employ;

4. Wrongful termination;

5. Wrongful discipline;

6. Wrongful deprivation of a career opportunity or denial of training;

7. Breach of employment contract;

8. Failure to grant tenure;

9. Negligent evaluation or reassignment;

10. Invasion of privacy;

11. Employment-related defamation; and

12. Harassment, including sexual harassment.

However, "employment-related practices wrongful acts" does not include sexual abuse or molestation.

L. "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

**EXHIBIT C**

M. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

N. "Other wrongful act" means any negligent act, error, omission, misstatement, misleading statement or breach of duty by you or any other insured while acting solely within the course and scope of employment by you, but only while performing duties related to your business.

However, "other wrongful act" does not include "employee benefits liability wrongful acts" or "employment-related practices wrongful acts".

O. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses from the conduct of your operations:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy;

6. The use of another's advertising idea in your "advertisement"; or

7. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

P. "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes material to be recycled, reconditioned, or reclaimed.

Q. "Post-judgment interest" means interest of the full amount of any settlement, verdict, award or judgment that accrues after entry of the settlement, verdict, award or judgment.

R. "Pre-judgment interest" means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment whether or not made part of the settlement, verdict, award or judgment.

S. "Property damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property; or

2. Loss of use of tangible property that has not been physically injured.

T. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

U. "Silica-related dust" means a mixture or combination of "silica" and other dust or particles.

V. "Suit" means a civil proceeding in which damages because of a "wrongful act" to which this insurance applies are alleged. "Suit" includes:

1. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

3. A governmental agency administrative action, but only if the agency has legal authority over the matter in which damages are claimed.

W. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

X. "Ultimate net loss" means the total amount of damages and "claim expenses", including any attorney fees awarded in favor of third parties that the insured is legally obligated to pay because of a "wrongful act".

Y. "Wrongful act" means an:

**EXHIBIT C**

1. "Employee benefits liability wrongful act";

2. "Employment-related practices wrongful act"; or

3. "Other wrongful act".

**EXHIBIT C**

**PUBLIC ENTITY**



# EVANSTON INSURANCE COMPANY

## PUBLIC ENTITIES AUTO LIABILITY COVERAGE FORM

Various Provisions in this Coverage Part restrict coverage.  Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations or Schedule Of Named Insureds..  The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

The words and phrases that appear in quotation marks have special meaning.  Please refer to Section **VI** – Definitions.

### SECTION I – COVERAGE

**A. Insuring Agreement**

1. We will pay on your behalf the "ultimate net loss" in excess of the Self-Insured Retention for which the insured becomes legally obligated to pay because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of an "auto".

2. We will also pay the "ultimate net loss" in excess of the Self-Insured Retention an insured legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of "autos", but only if the same "accident" causes either "bodily injury" or "property damage" to which this insurance applies.

3. We will have no obligation under this Coverage Part until:

   a. The insured's obligation to pay has been determined by a:

      (1) Judgment against the insured in a "suit"; or

      (2) Written agreement between you and the claimant or the claimant's legal representative, but only if such written agreement receives our prior written consent; and

   b. Such judgment or written agreement results in "ultimate net loss" that exceeds the Self-Insured Retention.

4. Our obligation to pay "ultimate net loss" in excess of the Self-Insured Retention is limited as described in Section **IV** – Limit Of Insurance.

**B. Defense Of Claim Or Suit**

1. You have the duty to investigate and defend any claim or "suit" to which this insurance applies and shall be responsible for the payment of any resulting "claim expenses". Defense of any claim or "suit" will be conducted by qualified legal counsel with relevant experience appointed by you with our approval; however, such approval will not be unreasonably denied. All payments for "claim expenses" incurred by you will be applied toward the Self-Insured Retention.

2. In no event will you offer or agree to pay any amount in excess of the Self-Insured Retention without our prior written consent. If we recommend to you a settlement amount for any claim or "suit" that exceeds the Self-Insured Retention, you will, in good faith, attempt to settle the claim or "suit" with the claimant or claimant's legal representative at or below the recommended settlement amount.

3. We have no duty to defend any claim or "suit". However, we have the right and you must give us the opportunity to associate in the defense, at our own expense, of any claim or "suit" against any insured because of "bodily injury", "property damage" or "covered pollution cost or expense" which, in our sole opinion, may exceed the Self-Insured Retention under this Coverage Part.

**MEPE 0001 03 14**        Includes copyrighted material of Insurance Services Office, Inc.,        **Page 1 of 10**
with its permission.

**EXHIBIT C**

**4.** We also have the right, but not the duty, to assume control of the defense, at our own expense, from you of any claim or "suit" which, in our sole opinion, may exceed the Self-Insured Retention under this Coverage Part. You and any other insured must cooperate with us fully. This assumption of control includes, but is not limited to:

    **a.** The investigation of any "accident";

    **b.** The selection or retention of defense counsel;

    **c.** The appeal of any judgment; or

    **d.** The settlement of any claim or "suit".

Our control of defense or settlement does not amend the Limit of Insurance or Self-Insured Retention.

## C. Exclusions

This insurance does not apply to any of the following:

**1. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the insured or in the care, custody, or control of any insured. But this exclusion does not apply to:

    **a.** Liability assumed under a sidetrack agreement;

    **b.** Property in the possession of persons at time of arrest or incarceration; or

    **c.** Property impounded, held or in bailment at your "police impound lot" or "parking lot or parking garage".

**2. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

    **a.** Work or operations performed by you or on your behalf; and

    **b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

    **(1)** When all of the work called for in your contract has been completed;

    **(2)** When all of the work to be done at the site has been completed, if your contract calls for work at more than one site; or

    **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**3. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

    **a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

    **b.** That the insured would have in the absence of a contract or agreement.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

    **a.** An "employee" of the insured arising out of and in the course of:

        **(1)** Employment by the insured; or

        **(2)** Performing duties related to the conduct of the insured's operations; or

**EXHIBIT C**

    **b.**  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

    **(1)**  Whether the insured may be liable as an employer or in any other capacity; and

    **(2)**  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under any "insured contract".

**5.**  **Expected Or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

**6.**  **Fellow Employee**

    "Bodily injury" to:

    **a.**  Any fellow "employee" of the insured arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

    **b.**  The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**7.**  **Handling Of Property**

    "Bodily injury" or "property damage" resulting from the handling of property:

    **a.**  Before it is moved from the place where it is accepted by the insured for movement into or onto the "auto"; or

    **b.**  After it is moved from the "auto" to the place where it is finally delivered by the insured.

**8.**  **Movement Of Property By Mechanical Device**

    "Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the "auto".

**9.**  **Non-Compensatory Damages**

    Any investigation, claim, "suit" or other proceeding seeking relief or redress in any form other than compensatory damages, including but not limited to, costs, fees or expenses which the insured may become obligated to pay as a result of a consent decree, settlement or adverse judgment for declaratory relief, for injunctive relief or for other equitable relief.

**10.**  **Nuclear Energy Liability**

    **a.**  "Bodily injury" or "property damage":

    **(1)**  With respect to which an insured under the policy is also an insured under a nuclear energy policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    **(2)**  Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    **(a)**  Any person or any organizations required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    **(b)**  The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

    **(3)**  Resulting from "hazardous properties" of "nuclear material", if:

    **(a)**  The "nuclear material":

    **(i)**  Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

    **(ii)**  Has been discharged or dispensed therefrom;

    **(b)**  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**EXHIBIT C**

       **(c)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(c)** applies only to "property damage" to such "nuclear facility" and any property thereat.

  **b.** As used in this exclusion:

    **(1)** "Hazardous properties" includes radioactive, toxic or explosive properties;

    **(2)** "Nuclear material" means "source material", "special nuclear material" or "by-products material";

    **(3)** "Source material", "special nuclear material" and "by-products material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

    **(4)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

    **(5)** "Waste" means any waste material:

      **(a)** Containing "by-products material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" contents, and

      **(b)** Resulting from the operation by any person or organization of a "nuclear facility" included within Paragraphs **(6)(a)** and **(6)(b)** below;

    **(6)** "Nuclear facility" means:

      **(a)** Any "nuclear reactor";

      **(b)** Any equipment or device designed or used for:

        **(i)** Separating the isotopes of uranium or plutonium;

        **(ii)** Processing or utilizing "spent fuel"; or

        **(iii)** Handling, processing or packaging "waste";

      **(c)** Any equipment or device used for the processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

      **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    **(7)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

    **(8)** With respect to this exclusion, "property damage" includes all forms of radioactive contamination of property.

**11. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

  **a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

  **b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**12. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**EXHIBIT C**

    **a.** That are, or that are contained in any property that is:

        **(1)** Being transported or towed by, handled, or handled for movement into, onto or from the "auto";

        **(2)** Otherwise in the course of transit by or on behalf of the insured; or

        **(3)** Being stored, disposed of, treated or processed in or upon the "auto";

    **b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the insured for movement into or onto the "auto"; or

    **c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the "auto" to the place where they are finally delivered, disposed of or abandoned by the insured.

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the "auto" or its parts, if:

        **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

        **(2)** The "bodily injury" or "property damage" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an insured with respect to "pollutants" not in or upon an "auto" if:

        **(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto"; and

        **(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**13. Racing**

    Any "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that "auto" is being prepared for such a contest or activity.

**14. War**

    "Bodily injury" or "property damage" arising directly or indirectly out of:

    **a.** War, including undeclared or civil war;

    **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**15. Workers' Compensation**

    Any obligation for which the insured or the insured's insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

**SECTION II – WHO IS AN INSURED**

The following are insureds:

**A.** You for any "auto".

**B.** Anyone else while using with your permission an "auto" except:

    **1.** The owner or anyone else from whom you hire or borrow an "auto" unless that "auto" is a trailer connected to an "auto" you own.

    **2.** Your "employees", volunteers or members of their households if the "auto" is owned by that "employee", volunteer or member of his or her household, unless acting within the scope of their duties on your behalf;

    **3.** Someone using an "auto" while he or she is working in a business of selling, servicing, repairing, impounding or parking "autos" unless that business is yours; or

**EXHIBIT C**

**4.** Anyone other than your "employees" or a lessee or borrower or any of their "employees", while moving property to or from an "auto".

**C.** All persons, entities, or organizations providing service to you under any mutual aid or similar agreement.

**D.** Any person, entity, or organization responsible for the conduct of such person is also an insured, but only with respect to "bodily injury", "property damage" or "covered pollution cost or expense" arising out of the operation of the "auto" or "mobile equipment".

## SECTION III – SELF-INSURED RETENTION

**A.** We have no obligation to pay "ultimate net loss" on behalf of the insured until you pay the full amount of the Self-Insured Retention shown in the Declarations.

**B.** The payment of the Self-Insured Retention may not be satisfied by any other insurance or negated, in whole or part, by any form of immunity from judgment or liability.

**C.** The Self-Insured Retention applies separately to each and every "accident" covered under this Coverage Part.

**D.** The Self-Insured Retention does not include any amount paid by any insured for claims or "suits" or parts of claims or "suits" brought against any insured for loss for which this Coverage Part does not apply.

**E.** The Self-Insured Retention does not reduce the Limit of Insurance.

## SECTION IV – LIMIT OF INSURANCE

Regardless of the number of "autos", insureds, premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total "ultimate net loss" in excess of the Self-Insured Retention resulting from any one "accident" is the Limit of Insurance shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of loss under this Coverage Part and any endorsement attached to this Coverage Part or any other Coverage Part included within this policy.

## SECTION V – AUTO LIABILITY CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Duties In The Event Of Accident, Claim Or Suit**

We have no duty under this Coverage Part unless there has been full compliance with the following duties:

**1.** You must immediately give us notice of any "accident", claim or "suit" which:

**a.** Appears reasonably likely to involve "ultimate net loss" equal to 50% or more of the Self-Insured Retention; or

**b.** Involves any of the following:

**(1)** Death, amputation, injury to the spinal cord or multiple fractures;

**(2)** Brain damage or injury, blindness or serious nerve damage;

**(3)** Internal injuries to a body organ or burns in the second or third degree;

**(4)** Class actions or putative class actions;

**(5)** Any claim requesting the indemnification of another party; or

**(6)** Any claim seeking punitive or exemplary damages.

**2.** Notice must include:

**a.** How, when, and where the "accident" occurred;

**b.** The insured's name and address; and

**c.** To the extent possible, the names and addresses of any injured persons and witnesses.

You and any other involved insured must record the specifics of the claim or "suit", including any demands, notices, summonses, legal papers and the date received.

**EXHIBIT C**

3. If we exercise our right to associate in or assume control of the defense of a claim or "suit" as provided in Section **I**, Paragraph **B. Defense Of Claim Or Suit** of this Coverage Part, you and any other insured involved in such claim or "suit" must:

    a. Authorize us to obtain records and other information;

    b. Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

    c. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this Coverage Part may also apply.

**B. Other Insurance**

1. The insurance provided by this Coverage Part is excess over the Self-Insured Retention for this Coverage Part, and over any other insurance, deductibles, retention or self-insurance, whether written on a primary, excess, contingent or any other basis, except for other insurance that is specifically purchased by you to apply in excess of this Coverage Part's applicable Limit of Insurance.

2. If any other insurance purchased by you or on your behalf is deemed to apply on the same excess basis as this Coverage Part, our obligation, subject to the applicable Self-Insured Retention and Limit of Insurance of this Coverage Part, will be shared with such other insurance by the method described in Paragraphs **3.** and **4.** below.

3. If such other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid for its applicable limit of insurance or none of the loss remains, whichever comes first.

4. If such other insurance does not permit contribution by equal shares, we will pay by limits. Under this method, each insurer's share is based on the ratio of its applicable limit(s) of insurance to the total applicable limits of insurance of all such insurers.

5. We have no obligation to pay any expenses incurred by such other insurers.

**C. Policy Period, Coverage Territory**

This Coverage Part applies to "accidents" occurring:

1. During the policy period shown in the Declarations; and

2. Within the coverage territory.

The coverage territory is anywhere in the world if your responsibility to pay "ultimate net loss" is determined in a "suit" on the merits brought in the United States of America (including its territories and possessions), Puerto Rico or Canada.

**SECTION VI – DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury", "property damage" or "covered pollution cost or expense".

**B.** "Auto" means:

1. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness, disease, shock, fright, mental injury or anguish, emotional distress or disability sustained by any person, including death resulting from any of these.

**D.** "Claim expenses" means reasonable amounts for the defense of an insured against a specific claim or "suit" to which this Coverage Part applies, including:

1. Costs incurred by you in connection with the investigation, adjustment, settlement or defense of any claim or "suit";

2. Legal expenses; and

**EXHIBIT C**

3. Litigation costs, including but not limited to "pre-judgment interest" and "post-judgment interest" as required by law on awards and judgments, and the cost of bonds to release attachments or to appeal a claim or "suit".

"Claim expenses" also includes reasonable attorney fees and necessary litigation expenses incurred which are your obligation under an "insured contract" in the defense of an indemnitee or incurred by an indemnitee at your request.

"Claim expenses" does not include salaries or expenses of any insured (including affiliate or subsidiary organizations of any insured), annual retainers, overhead or any fees paid for claim administration.

E. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the "auto";

(2) Otherwise in the course of transit by or on behalf of the insured; or

(3) Being stored, disposed of, treated or processed in or upon the "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the insured for movement into or onto the "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the "auto" to the place where they are finally delivered, disposed of or abandoned by the insured.

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph 6.b. or 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an insured with respect to "pollutants" not in or upon an "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with:

a. Vehicle or pedestrian private railroad crossings at grade; or

b. Construction or demolition operations on or within 50 feet of a railroad;

4. A mutual aid assistance agreement or contract between political subdivisions;

5. An elevator maintenance agreement;

**EXHIBIT C**

6. Any law enforcement service agreement for anyone other than you, provided such agreement has received your departmental approval;

7. That part of any other contract or agreement pertaining to your operations under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means liability that would be imposed by law for injury or damage to persons or property in the absence of any contract or agreement; or

8. That part of any contract or agreement entered into, as part of your operations, pertaining to the rental or lease, by you or any of your "employees", of any "auto".

An "Insured contract" does not include that part of any contract or agreement:

1. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

2. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of an "auto" over a route or territory that a person or organization is authorized to serve by public authority.

H. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your operations. "Leased worker" does not include a "temporary worker".

I. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobiles or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

J. "Parking lot or parking garage" means:

**EXHIBIT C**

1. Those areas you own and operate that are used by the general public, including your "employees", to park "autos" or "mobile equipment" whether or not a fee is charged; and

2. Those areas where you, or an insured on your behalf, are exercising physical control over such "autos" or "mobile equipment" or otherwise where your legal liability has been established.

K. "Police impound lot" means those locations you own or operate, where "autos" or "mobile equipment" that are seized pursuant to law are stored. "Police impound lot" also includes that portion of the roads or on the ways adjacent to these locations.

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes material to be recycled, reconditioned or reclaimed.

M. "Post-judgment interest" means interest on the full amount of any settlement, verdict, award or judgment that accrues after entry of the settlement, verdict, award or judgment.

N. "Pre-judgment interest" means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment, whether or not made part of the settlement, verdict, award or judgment.

O. "Property damage" means damage to or loss of use of tangible property.

P. "Suit" means a civil proceeding in which damages because of "bodily injury" or "property damage" or a "covered pollution cost or expense", to which the Coverage Part applies, are alleged.

"Suit" includes:

1. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured must submit or does submit; or

2. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits.

Q. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

R. "Ultimate net loss" means the total amount of damages and "claim expenses", including any attorneys' fees awarded in favor of third parties, that the insured is legally liable to pay because of "bodily injury", "property damage" or "covered pollution cost or expense".

**EXHIBIT C**



**PUBLIC ENTITY**
POLICY NUMBER: MPEMID0002-16-01

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ANNUAL AGGREGATE DEDUCTIBLE

All Coverage Parts included in this policy are subject to the following.  Words that appear in quotation marks will carry the same definitions as shown in the applicable Coverage Parts attached to this policy.

### SCHEDULE

| Annual Aggregate Deductible: | $ 500,000 |
|---|---|

Our obligation to pay "ultimate net loss" in excess of the Self-Insured Retention under this policy does not apply until you have paid the full amount of the Annual Aggregate Deductible shown in the Schedule above. The Annual Aggregate Deductible applies to all "ultimate net loss" in excess of the Self-Insured Retention, regardless of the number of Coverage Parts attached to this policy, insureds, claims ("claims") made or "suits" brought.

The Annual Aggregate Deductible is not considered a part of the Self-Insured Retention and does not accrue to the exhaustion of the Self-Insured Retention or Annual Aggregate Self-Insured Retention, if applicable.

All other terms and conditions remain unchanged.

MEPE 2212 03 14          Includes copyrighted material of Insurance Services Office,          Page 1 of 1
                                    Inc., with its permission.

**EXHIBIT C**

**PUBLIC ENTITY**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CLAIM EXPENSES – IN ADDITION TO THE LIMITS OF INSURANCE

This endorsement modifies insurance provided under the following:

PUBLIC ENTITIES AUTO LIABIITY COVERAGE FORM
PUBLIC ENTITIES DATA BREACH LIABILITY COVERAGE FORM
PUBLIC ENTITIES GENERAL LIABILITY COVERAGE FORM
PUBLIC ENTITIES WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE FORM
PUBLIC ENTITIES WRONGFUL ACTS LIABILITY COVERAGE FORM

**A.** The following is added to Section **IV** – Limits Of Insurance:

If we have an obligation under this Coverage Part to pay "ultimate net loss" in excess of the Self-Insured Retention, any "claim expenses" we pay will be in addition to, and will not reduce, the applicable Limits of Insurance.

**B.** The definition of "ultimate net loss" is amended to remove reference to "claim expenses" and as a result, "claim expenses" will not be included in the calculation of "ultimate net loss".

All other terms and conditions remain unchanged.

**EXHIBIT C**



**PUBLIC ENTITY**
POLICY NUMBER:  MPEMID0002-16-01

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CLAIMS ADMINISTRATION

All Coverage Parts included in this policy are subject to the following condition. Words that appear in quotation marks will carry the same definitions as shown in the applicable Coverage Parts attached to this policy.

**SCHEDULE**

**Claims Administrator Name And Address:**

**Broward County Sheriff's Office**

**2601 West Broward BLVD**

**Fort Lauderdale, FL**

**33312**

The following Condition is added:

**Claims Administration**

1. You are responsible for the administration, investigation or settlement of any claim ("claim") or "suit" to which this insurance applies.  If you contract with a third party Claims Administrator, the Claim Administrator must be:

    a.  Approved by us; and

    b.  Listed in the Schedule of this endorsement.

    If you have contracted with more than one Claims Administrator, a separate endorsement must be completed for each.

2. In the event a contract is terminated, you must notify us 90 days prior to the effective date of such termination.

3. We assume no liability for you or your Claims Administrator's administration, investigation or settlement of any claim ("claim") or "suit".

4. Cancellation, nonrenewal or expiration of this policy does not terminate this condition.

All other terms and conditions remain unchanged.

**EXHIBIT C**

**INTERLINE**



**MARKEL®**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

CHANGE NUMBER:

| POLICY NUMBER: MPEMID0002-16-01 | POLICY CHANGES EFFECTIVE: 10/01/2017 | COMPANY: Evanston Insurance |
|---|---|---|
| NAMED INSURED: Broward County Sheriff's Office | AUTHORIZED REPRESENTATIVE Robin Russo | |
| COVERAGE PART(S) AFFECTED: COMMON POLICY CONDITIONS | | |

Paragraph **B.** under **Common Policy Conditions** – is amended as follows:

**B. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation. The first Named Insured's cancellation shall be binding on all other insureds.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 90 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

_____
Authorized Signature

All other terms and conditions remain unchanged.

**EXHIBIT C**

INTERLINE



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES

CHANGE NUMBER:

| POLICY NUMBER: MPEMID0002-16-01 | POLICY CHANGES EFFECTIVE: 10/01/17 | COMPANY: Evanston Insurance |
|---|---|---|
| NAMED INSURED: Broward County Sheriff's Office | AUTHORIZED REPRESENTATIVE Robin Russo | |
| COVERAGE PART(S) AFFECTED: COMMON POLICY CONDITIONS | | |

**ADVICE OF CANCELLATION TO ENTITIES OTHER THAN THE NAMED INSURED ENDORSEMENT**

**SCHEDULE**

Name of Certificate Holder(s) and Address:

1. Aero Lauderdale LLC
   c/o CertFocus
   PO Box 140528
   Kansas City, MO 64114

If the **Insurer** cancels this policy for any reason other than cancellation for non-payment of premium, notice of cancellation shall be given 30 days before the effective date of cancellation in accordance with the terms and conditions of the policy to the Certificate Holder(s) shown in the above Schedule.

Other than the right to receive notice of cancellation as set forth herein, this endorsement confers no rights under this policy to the Certificate Holder(s) including, but not limited to, additional insured status or additional Named Insured status.

As used herein, **Insurer** means the insurance company shown in the header on the Declarations Page of this policy.

_(signature)_

_____

Authorized Signature

All other terms and conditions remain unchanged.

**MEIL 1203 03 12**      Includes copyrighted material of Insurance Services Office, Inc. with its permission.      **Page 1 of 1**

**EXHIBIT C**

**INTERLINE**



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES

CHANGE NUMBER:

| POLICY NUMBER: MPEMID0002-16-01 | POLICY CHANGES EFFECTIVE: 10/01/17 | COMPANY: Evanston Insurance |
|---|---|---|
| NAMED INSURED: Broward County Sheriff's Office | AUTHORIZED REPRESENTATIVE Robin Russo | |
| COVERAGE PART(S) AFFECTED: COMMON POLICY CONDITIONS | | |

**ADVICE OF CANCELLATION TO ENTITIES OTHER THAN THE NAMED INSURED ENDORSEMENT**

**SCHEDULE**

Name of Certificate Holder(s) and Address:

1. The State of Florida
   Department of Security Services at the Circuit 17 Assessment
   2737 Centerview Dr.
   Tallahassee, FL 32399-3100

If the **Insurer** cancels this policy for any reason other than cancellation for non-payment of premium, notice of cancellation shall be given 30 days before the effective date of cancellation in accordance with the terms and conditions of the policy to the Certificate Holder(s) shown in the above Schedule.

Other than the right to receive notice of cancellation as set forth herein, this endorsement confers no rights under this policy to the Certificate Holder(s) including, but not limited to, additional insured status or additional Named Insured status.

As used herein, **Insurer** means the insurance company shown in the header on the Declarations Page of this policy.

_____
Authorized Signature

All other terms and conditions remain unchanged.

**MEIL 1203 03 12**     Includes copyrighted material of Insurance Services Office, Inc. with its permission.     **Page 1 of 1**

**EXHIBIT C**



**PUBLIC ENTITY**
POLICY NUMBER:  MPEMID0002-16-01

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED – SPECIFIED ACTIVITIES OR OPERATIONS

This endorsement modifies insurance provided under the following:

PUBLIC ENTITIES GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

| |
|---|
| **Person Or Organization** |
| State of Florida |
| 2737 Centerview Drive |
| Tallahassee, FL 32399-3100 |
| **Description Of Activities Or Operations:** |
| Security services at the Circuit 17 Juvenile Assessment Center |

**A.** Section **II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule above, with whom you have agreed in a written contract or written agreement to provide insurance, but:

  **1.** Only if the written contract or written agreement is in effect during the policy period shown in the Declarations and was executed prior to the "bodily injury", "property damage" or "personal and advertising injury"; and

  **2.** Only with respect to their tort liability assumed by you relating to or arising out of the specified activities or operations shown in the Schedule above.  Tort liability means liability that would be imposed by law for injury or damage to persons or property in the absence of any contract or agreement.

**B.** Any person's or organization's status as an additional insured ends at the earliest of the following times:

  **1.** The written contract or written agreement terminates;

  **2.** The specified activities or operations shown in the Schedule above terminate;

  **3.** The policy period ends; or

  **4.** The policy is cancelled.

**C.** The coverage provided by this endorsement does not apply to any "bodily injury", "property damage" or "personal and advertising injury" arising out of the sole negligence of such additional insured.

**D.** The insurance provided to such additional insured:

  **1.** Only applies to the extent permitted by law; and

  **2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such

MEPE 2225 03 14          Includes copyrighted material of Insurance Services Office, Inc.,          **Page 1 of 2**
with its permission.

**EXHIBIT C**

additional insured.

**E.** With respect to the insurance afforded to such additional insured, the following is added to Section **IV** – Limits Of Insurance:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

The insurance afforded to the additional insured does not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions remain unchanged.

**EXHIBIT C**

**INTERLINE**



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

CHANGE NUMBER:

| POLICY NUMBER: MPEMID0002-16-01 | POLICY CHANGES EFFECTIVE: 10/01/2017 | COMPANY: Evanston |
|---|---|---|
| NAMED INSURED: Broward County Sheriff's Office | AUTHORIZED REPRESENTATIVE | |
| COVERAGE PART(S) AFFECTED: General Liability | | |

Exclusion **3. Aircraft, Aviation Activities, Auto Or Watercraft** Under Paragraph **C. Exclusions** under **Section I – Coverage** is amended as follows:

**3. Aircraft, Aviation Activities, Or Auto**

"Bodily injury" or "property damage" arising out of the ownership, operation, maintenance, use or entrustment to others of any:

**a.** Aircraft, airfields, runways, hangars, buildings, or other properties in connection with any aviation activities or airports;

**b.** "Auto",

owned or operated by or rented or loaned to any insured. Use includes "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or "auto" that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** Law enforcement activities conducted by the Insured at the Ft. Lauderdale – Hollywood International Airport;

**(2)** Liability for the premises of airport buildings or other properties to which the general public is admitted;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft;

or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

_(signature)_

_____

Authorized Signature

All other terms and conditions remain unchanged.

**EXHIBIT C**

**INTERLINE**



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES

CHANGE NUMBER:

| POLICY NUMBER: MPEMID0002-16-01 | POLICY CHANGES EFFECTIVE: 10/01/2017 | COMPANY: Evanston Insurance |
|---|---|---|
| NAMED INSURED: Broward County Sheriff's Office | AUTHORIZED REPRESENTATIVE Robin Russo | |
| COVERAGE PART(S) AFFECTED: PUBLIC ENTITIES AUTO LIABILITY | | |

**Section I – Coverage** is amended as follows:

Exclusion **6. Fellow Employee** under Paragraph **C. Exclusions** is deleted in its entirety.

_[signature]_

_____

Authorized Signature

All other terms and conditions remain unchanged.

**MEIL 1203 03 12**          Includes copyrighted material of Insurance Services Office, Inc. with its permission.          **Page 1 of 1**

## EXHIBIT C

**INTERLINE**



**MARKEL®**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES

CHANGE NUMBER:

| POLICY NUMBER: MPEMID0002-16-01 | POLICY CHANGES EFFECTIVE: 10/01/2017 | COMPANY: Evanston Insurance |
|---|---|---|
| NAMED INSURED: Broward County Sheriff's Office | AUTHORIZED REPRESENTATIVE Robin Russo | |
| COVERAGE PART(S) AFFECTED: PUBLIC ENTITES GENERAL LIABILITY | | |

Exclusion **30. Pollution** under **C. Exclusions** under **Section I – Coverage** is amended as follows:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

However, this paragraph does not apply to:

**(1)** "Bodily injury" "Personal and advertising injury" or "property damage" resulting from activities directly related to law enforcement and firefighting including the use of teargas, mace, oleoresin capsicum (o.c.), pepper gas or similar substances by an Insured within the scope of their employment by the Named Insured;

**(2)** "Bodily injury" or "property damage" caused by heat, smoke or fumes from a hostile fire. Hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be;

**(3)** "Bodily injury" or "property damage" arising out of the unintentional discharge, dispersal, seepage, migration, release or escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from the "mobile equipment" part designed to hold, store or receive them; or

**(4)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured, but only so long as the "bodily injury" was caused by smoke, fumes, vapors or soot from equipment used to heat that building.

**(5)** "Bodily injury" or "property damage" or "personal and advertising injury" arising directly or indirectly out of the use of any of the following chemicals:

**(a)** Those used for the normal operations of school, including but not limited to those used for laboratories, industrial arts or shop classes, air supplies, maintenance supplies and equipment and health care equipment;

**(b)** Those used in connection with the installation, service, repair or maintenance of swimming pools, spas or fountains; and

**(c)** Pesticides, herbicides or other materials mixed with or used in conjunction with the pesticides and herbicides commonly used by pest control operators, lawn and landscaping operations.

**b.** Any loss, cost or expense arising directly or indirectly out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to or assess the effects of "pollutants"; or

**(2)** Claim or "suit" by or on behalf of a governmental authority or others because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of "pollutants".

All other terms and conditions remain unchanged.

_____
Authorized Signature

**MEIL 1203 03 12**       Includes copyrighted material of Insurance Services Office, Inc. with its permission.       **Page 1 of 1**

**EXHIBIT C**



**MARKEL**®

**INTERLINE**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES

CHANGE NUMBER:

| POLICY NUMBER: MPEMID0002-16-01 | POLICY CHANGES EFFECTIVE:<br>10/01/2017 | COMPANY:<br>Evanston Insurance |
|---|---|---|
| NAMED INSURED:<br>Broward County Sheriff's Office | AUTHORIZED REPRESENTATIVE<br>Robin Russo | |
| COVERAGE PART(S) AFFECTED:<br>COMMON POLICY CONDITIONS | | |

**COMMON POLICY CONDITIONS** is amended as follows:

Paragraph **J. Premium Audit** is deleted in its entirety.

_____

Authorized Signature

All other terms and conditions remain unchanged.

**MEIL 1203 03 12**          Includes copyrighted material of Insurance Services Office, Inc. with its permission.          **Page 1 of 1**

**EXHIBIT C**

INTERLINE



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES

CHANGE NUMBER:

| POLICY NUMBER: MPEMID0002-16-01 | POLICY CHANGES EFFECTIVE: 10/01/2017 | COMPANY: Evanston Insurance |
|---|---|---|
| NAMED INSURED: Broward County Sheriff's Office | AUTHORIZED REPRESENTATIVE Robin Russo | |
| COVERAGE PART(S) AFFECTED: COMMON POLICY CONDITIONS | | |

### UNINTENTIONAL ERRORS & OMISSIONS ENDORSEMENT

This endorsement modifies insurance provided by the policy:

Paragraph **K. of COMMON POLICY CONDITIONS** is deleted in its entirety and replaced with the following:

**K. Representations**

By accepting this policy and as a condition precedent to coverage, you agree that:

**1.** The information shown in the Declarations is accurate and complete;

**2.** The information is based upon representations you made to us in your submission or application for this policy;

**3.** We have issued this policy in reliance upon your representations in the submission or application; and

**4.** Except as otherwise provided in this policy or by law, this policy is void in any case of fraud or if you conceal or misrepresent any material facts concerning this policy in your submission or application for this policy.

The unintentional failure by you or any insured to provide accurate and complete representations as of the inception of the policy will not prejudice the coverages afforded by this policy.

_____

Authorized Signature

All other terms and conditions remain unchanged.

**MEIL 1203 03 12**   Includes copyrighted material of Insurance Services Office, Inc. with its permission.   **Page 1 of 1**

## EXHIBIT C

**PUBLIC ENTITY**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

PUBLIC ENTITIES GENERAL LIABILITY COVERAGE FORM

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

All other terms and conditions remain unchanged.

**EXHIBIT C**

**INTERLINE**

**MARKEL**®

# PRIVACY NOTICE

We are committed to safeguarding your privacy. We understand your concerns regarding the privacy of your nonpublic personal information. No nonpublic personal information is required to be collected when you visit our websites; however, this information may be requested in order to provide the products and services described.  We do not sell nonpublic personal information to non-affiliated third parties for marketing or other purposes. We only use and share this type of information with non-affiliated third parties for the purposes of underwriting insurance, administering your policy or claim and other purposes as permitted by law, such as disclosures to insurance regulatory authorities or in response to legal process. Notwithstanding the foregoing, we may use this information for the purpose of marketing our own products and services to you.

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms;
- Information about your transactions with us, our affiliates, or others; and/or
- Information we receive from consumer reporting agencies and inspection reports.

We do not disclose any nonpublic personal information about our customers/claimants or former customers/claimants to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Service providers, such as insurance agents and/ or brokers and claims adjusters; and/or
- Other non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about our customers/claimants to those individuals who need to know that information to provide products and services to our customers/claimants or as permitted by law.  We maintain physical, electronic, and procedural safeguards to guard your nonpublic personal information.

*Residents of California:*

You may request to review and make corrections to recorded non-public personal information contained in our files.  A more detailed description of your rights and practices regarding such information is available upon request.  Please contact your agent/broker for instructions on how to submit a request to us.

MPIL 1007 03 14

Page 1 of 1

**EXHIBIT C**



**PUBLIC ENTITY**
POLICY NUMBER:  PEMID0002-16-01

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SEXUAL ABUSE ACTS COVERAGE

This endorsement modifies insurance provided under the following:

PUBLIC ENTITIES WRONGFUL ACTS LIABILITY COVERAGE FORM

### SCHEDULE

| Limits Of Insurance: | $ 2,500,000 Each Sexual Abuse Act |
| --- | --- |
| | $ 5,000,000 Sexual Abuse Act Aggregate |

**A.** The following Insuring Agreement is added to Section **I** – Coverage, Paragraph **A.**:

**Insuring Agreement – Sexual Abuse Liability**

1. We will pay "ultimate net loss" in excess of the Self-Insured Retention that you are legally obligated to pay as damages because of "injury" arising out of a "sexual abuse act" by the insured or any other person for whose acts the insured is legally liable, to which this insurance applies.

   We will have no obligation under this Coverage Part until:

   **a.** Your obligation has been determined by a:

   **(1)** Judgment against the insured in a "suit"; or

   **(2)** Written agreement between you and the claimant or the claimant's legal representative, but only if such written agreement receives our prior written consent; and

   **b.** Such judgment or written agreement results in "ultimate net loss" that exceeds the Self-Insured Retention.

   Our obligation to pay "ultimate net loss" in excess of the Self-Insured Retention is limited as described in Paragraph **F.** of this endorsement.

2. This insurance applies to "injury" only if:

   **a.** The "sexual abuse act" takes place in the "coverage territory";

   **b.** The "sexual abuse act" occurs during the policy period.  Provided; however, that prior to this policy period, no insured listed under Paragraphs **A.**, **B.1.** or **B.2.** of Section **II** – Who Is An Insured or any "employee" or other person authorized by you to give or receive notice of a "sexual abuse act" or "claim", knew that the "sexual abuse act" had occurred, in whole or part. If such listed insured or authorized person knew, prior to this policy period, that the "sexual abuse act" occurred, then any continuation, change or resumption of such "sexual abuse act" during or after this policy period will be deemed to have been known prior to this policy period.

3. A "sexual abuse act" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of a "sexual abuse act" or "claim", includes any continuation, change or resumption of that "sexual abuse act" after the end of the policy period.

**EXHIBIT C**

4.  A "sexual abuse act" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II – Who Is An Insured** or any "employee" authorized by you to give or receive notice of a "sexual abuse act" or "claim":

   a.  Reports the "sexual abuse act" to us or any other insurer;

   b.  Receives a written or verbal demand or "claim" because of the "sexual abuse act"; or

   c.  Becomes aware by any other means that the "sexual abuse act" has occurred.

**B.**  Section **I – Coverage**, Paragraph **B.** is extended to apply to "claims" and "suits" as a result of an actual or alleged "sexual abuse act".

**C.**  With respect to the coverage provided by this endorsement only, Section **I – Coverage**, Paragraph **C.** is amended as follows:

   1.  All references to "wrongful act" in Paragraph **C.1.** are extended to include "sexual abuse act".

   2.  Exclusion **1.a. Abuse Or Molestation** is deleted in its entirety.

   3.  The following exclusions are added:

      This Insurance does not apply to:

      a.  **Criminal Or Intentional Wrongful Acts**

         Defense of or "claim" against any insured if there is a final legal determination that the insured has committed any criminal or deliberately wrongful act or omission in connection with the "sexual abuse act".

         This exclusion does not apply to any other insured where there is no legal finding that the other insured had committed such act or omission.

      b.  **Other Causes**

         "Injury" arising out of any cause other than a "sexual abuse act".

**D.**  Paragraph **D.2.** under Section **II – Who Is An Insured** is replaced by the following:

   2.  Coverage does not apply to any "wrongful act" or "sexual abuse act" committed before you acquired or formed the entity or organization.

**E.**  Paragraph **C.** under Section **III – Self-Insured Retention** is replaced by the following:

   **C.**  The Self-Insured Retention applies separately to each and every "wrongful act" or "sexual abuse act" under this Coverage Part.

**F.**  With respect to the coverage provided by this endorsement, the following is added to Section **IV – Limits Of Insurance**:

   1.  Subject to the Aggregate Limit shown in the Declarations for all loss under this Coverage Part, the most we will pay for all "ultimate net loss" under this endorsement for all "injury" resulting from all "sexual abuse acts" committed during the policy period is the Sexual Abuse Acts Aggregate limit shown in the Schedule of this endorsement.

   2.  Subject to Paragraph **2.** above, the most we will pay for "ultimate net loss" under this endorsement for all "injury" resulting from any one "sexual abuse act" is the Each Sexual Abuse Act limit shown in the Schedule of this endorsement.  Multiple "sexual abuse acts" involving the same person or persons shall be deemed to be one "sexual abuse act", regardless of the number of injured parties or the period of time over which the acts took place.

   3.  The limits shown in the Schedule of this endorsement are a part of, not in addition to, the applicable limits stated in the Declarations of this policy, and such policy limits will be reduced by any payments we make under this coverage.

**G.**  All references to "wrongful act" in Section **V** are extended to include "sexual abuse act".

**H.**  Section **VII – Definitions** is amended as follows:

   1.  Definition **E.** "Claim" is replaced by the following:

      **E.**  "Claim" means a request or demand received by the insured or by us for money or services, including but not limited to the institution of "suit" or arbitration proceedings against the insured, seeking damages from an actual or alleged "wrongful act" or "sexual abuse act".

   2.  Definition **V.** "Suit" is amended to include damages because of a "sexual abuse act".

**MEPE 2203 03 14**           Includes copyrighted material of Insurance Services Office, Inc.,           **Page 2 of 3**
                                      with its permission.

**EXHIBIT C**

3.  Definition **X**. "Ultimate net loss" is replaced by the following:

    **X.**  "Ultimate net loss" means the total amount of damages and "claim expenses", including any attorney fees awarded in favor of third parties that the insured is legally obligated to pay because of a "wrongful act" or "sexual abuse act".

4.  The following definitions are added:

    "Injury" means bodily injury, sickness, disease, shock, fright, mental injury or anguish, emotional distress or disability sustained by a person, including death resulting from any of these.

    "Sexual abuse act" means any actual, alleged, attempted or proposed sexual or physical abuse, exploitation or molestation of any person. A series of related "sexual abuse acts" shall be treated as a single "sexual abuse act".

All other terms and conditions remain unchanged.

**EXHIBIT C**