UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: 0:22-CV-62076-WPD/PAB

GREGORY TONY, in his official capacity
as Sheriff of Broward County,

       Plaintiff,

v.

EVANSTON INSURANCE COMPANY,

       Defendant.

_____/

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

      Plaintiff, Gregory Tony, in his official capacity as Sheriff of Broward County ("BSO"), submits this reply memorandum of law in further support of BSO's Motion for Judgment on the Pleadings (the "Motion") [ECF No. 48].

## I.      INTRODUCTION

      None of Evanston's arguments warrants a change in this Court's prior ruling that the Parkland Shooting Incident constitutes a single "occurrence" under the Policy [ECF No. 38][1], or provides a basis to deny BSO's Motion.  It is instead clear from the pleadings and this Court's Order that BSO is entitled to a judgment on the pleadings declaring that the Parkland Shooting Incident constitutes a single "occurrence" under the Policy, and that BSO must exhaust only a single Self-Insured Retention ("SIR") of $500,000.

      Evanston first argues that BSO seeks an impermissible "advisory opinion."  But the Amended Complaint alleges an actual controversy between the parties concerning the proper interpretation of the Policy and the parties' rights and obligations thereunder.  "[F]ederal courts long have held that the Declaratory Judgment Act is an appropriate vehicle through which to determine litigants' rights and/or liabilities arising from contracts of insurance."  *Gerdau*

---

[1] *See* Order on Defendant Evanston's Motion to Dismiss and Motion to Strike (the "Order").

*Ameristeel US Inc. v. Zurich Am. Ins Co.*, No. 20-82217, 2021 WL 7682525, at *2 (S.D. Fla. May 25, 2021).

Evanston next argues that the doctrine of *contra proferentem* does not apply, notwithstanding this Court's prior—and correct—determination that it was required to interpret the ambiguous policy term in BSO's favor.  Evanston's argument ignores well-settled Florida law holding that any ambiguity in insurance policy language "***must*** be liberally construed in favor of coverage and ***strictly against the insurer***."  *Washington Nat'l Ins. Co. v. Ruderman*, 117 So. 3d 943, 949-50 (Fla. 2013) (emphasis added).  Evanston's argument that the Court must consider extrinsic evidence before interpreting the Policy is simply contrary to binding Florida law.  As the Florida Supreme Court also made clear in *Ruderman*, when "the policy is ambiguous it must be construed against the insurer and in favor of coverage ***without resort to consideration of extrinsic evidence***."  *Id.* at 945 (emphasis added).  Evidence of BSO's supposed subjective intent and its purported "sophistication" are "not relevant" and are "immaterial to a proper construction of the [P]olicy."  *Atlantic Marine Fla., LLC v. Evanston Ins. Co.*, 775 F.3d 1268, 1277 n.25 (11th Cir. 2014) (citing *Ruderman*, 117 So. 3d 948, 952).  The Court can therefore interpret the Policy now as a matter of law.

The remainder of Evanston's Response regurgitates the same legal arguments Evanston previously made and which this Court has now twice rejected.  As this Court already determined, the term "occurrence" is ambiguous as applied to the facts of this case.  It "reasonably can be interpreted to mean either the entire shooting spree by Cruz or each shot he fired that resulted in separate injuries to a separate victim." (Order at p. 12).  And because BSO favors the Parkland Shooting Incident be a single "occurrence" under the Policy, that is the interpretation this Court must "adopt[] under Florida's well-settled principles of insurance policy interpretation, which require ambiguity in an insurance policy to be construed in favor of the insured."  (*Id.* at p. 18).  BSO's Motion should therefore be granted.

## II.   ARGUMENT

### A. The Amended Complaint Alleges an Actual Controversy Between the Parties Concerning the Interpretation of the Policy

Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, "a court may declare the rights and other legal relations of any interested party in the case of an actual controversy within its jurisdiction."  (Order at p. 5).  "For a controversy to exist, 'the facts alleged, under all the

circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" (*Id.* at pp. 5-6) (quoting *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995)).  Stated differently, "[a] party seeking a declaratory judgment must allege facts in a complaint from which it appears that there is a substantial likelihood that it will suffer injury in the future that can be remedied or redressed by a favorable judicial decision." *Maryland Cas. Co. v. Smartcop, Inc.*, No. 4:11-cv-10100-KMM, 2012 WL 2675476, at *2 (S.D. Fla. July 6, 2012) (complaint stated claim for declaratory relief where parties had bona fide dispute concerning the proper interpretation of insurance policy).  "[F]ederal courts long have held that the Declaratory Judgment Act is an appropriate vehicle through which to determine litigants' rights and/or liabilities arising from contracts of insurance." *Gerdau Ameristeel US Inc.*, 2021 WL 7682525, at *2 (rejecting the defendant's argument that the claim for declaratory judgment regarding parties' rights and obligations under insurance policies was an "improper advisory opinion").

Evanston's argument that BSO is merely seeking an "advisory opinion" with respect to a "hypothetical claim" is belied by the allegations of the Amended Complaint.  The Amended Complaint specifically alleges that Evanston "continues to refuse to accept the Parkland Shooting Incident as one occurrence under the Policy," such that "BSO has directly incurred what it believes is a direct contractual obligation of [Evanston]."  [ECF No. 20 at ¶ 30].  In other words, BSO alleges a present dispute concerning the parties' rights and obligations under the Policy.  As alleged in the Amended Complaint, Evanston has taken the position that each victim constitutes a separate occurrence under the Policy such that BSO must exhaust the $500,000 SIR for each complaint filed against BSO.  [ECF No. 20 at ¶ 23].[2]  BSO, on the other hand, contends that the Parkland Shooting Incident constitutes a single occurrence such that BSO must exhaust only a single SIR under the Policy.  [*Id.* at ¶ 21].  As such, there presently is an actual controversy between the parties regarding the proper interpretation of the Policy.  This is a justiciable controversy that the Court may resolve by declaratory judgment.  *Smartcop*, 2020 WL 2675476, at *2.

---

[2]  *See also* Evanston's Answer and Affirmative Defenses to Amended Complaint ("Answer") [ECF No. 40 at p. 5, Nos. 5 and 6] (Affirmative Defense No. 5:  "The Parkland Shooting Incident constitutes more than one occurrence under the Evanston commercial general liability excess policy." and Affirmative Defense No. 6.:  "BSO is required to satisfy more than one SIR under the Evanston excess policy in connection with the Parkland Shooting Incident.").

**B. Evanston's Purported Affirmative Defenses Do Not Prevent Entry of Judgment on the Pleadings in Favor of BSO**

Evanston next argues that the Motion should be denied because Evanston has asserted defenses to the Amended Complaint. Evanston, of course, has the burden of establishing the applicability of its affirmative defenses. *Blue Cross and Blue Shield of Al. v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990). "[A]ffirmative defenses must be adequately pled to withstand the motion for judgment on the pleadings." *CMZ Enterprises, Inc. v. Spyker USA, LLC*, No. 19-61782-CIV, 2020 WL 9458888, at *2 (S.D. Fla. 2020) (affirmative defenses did not defeat entry of judgment on the pleadings in favor of plaintiff) (citing *Ameriserv Tr. V. United States*, 125 Fed. Cl. 733, 742 (2016) ("At a minimum, affirmative defenses must be pled in sufficient detail "to give the opposing party notice of the affirmative defense and a chance to respond.'") (citations omitted); *Mortgage Electronic Registration Systems, Inc. v. Koeppel*, No. 5:18-cv-03443-EJD, 2020 WL 1233925 (N.D. Cal. Mar. 13, 2020) (affirmative defenses did not preclude judgment on the pleadings); *Scottsdale Ins. Co. v. Good Karma Holdings LLC*, 500 F. Supp. 3d 634, 644 (W.D. Ky. 2020) (affirmative defenses did not prevent court from granting plaintiff's motion for judgment on the pleadings).

The only defense that Evanston substantively addresses in its Response is its fourteenth defense that "the doctrine of *contra proferentum* does not apply to BSO and/or the policy is not interpreted against Evanston or in favor of BSO." (Response at p. 1). Specifically, Evanston contends that this well-settled principle of insurance policy interpretation should not apply here because BSO is a "sophisticated insured who participated in policy negotiations." (*Id.* at p. 6). First, Evanston did not plead these or any other "facts" in its Answer. [ECF No. 40]. Second, and most importantly, the Florida Supreme Court has never articulated a "sophisticated insured" exception to the rules of construction applicable to ambiguous insurance policy provisions. To the contrary, it has consistently made clear (both before and after *Ruderman*) that ambiguous policy provisions *must* be liberally construed in favor of the insured and strictly against the insurer. *See Ruderman*, 117 So. 3d at 949-50 (collecting cases); *Gov't Employees Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017).[3]

---

[3] Evanston's argument is based on an overly generous reading of *RTG Furniture Corp. v. Indus. Risk Insurers*, 616 F. Supp. 2d 1258 (S.D. Fla. 2008) – a non-binding pre-*Ruderman* decision that is contrary to controlling law from the Florida Supreme Court. In any event, *RTG Furniture* did

Evanston's reliance on *School Bd. of Broward Cnty. v. Great Am. Ins. Co.*, 807 So. 2d 750 (Fla. Dist. Ct. App. 2002), to argue otherwise is misplaced.  In that case, *the insurance company* argued that any ambiguity should be construed *against the insured*. *Id.* at 752.  The Fourth DCA disagreed, because "Florida's policy is to construe any ambiguity in a [policy] 'in favor of granting the broadest possible coverage to those intended to be benefitted by protection of the [policy].'" *Id.* (citations omitted).  Indeed, as the Fourth DCA explained, "the burden is on the [insurer], who is in the business, to include the appropriate language in its [policies] if it seeks to narrow its obligations . . ." *Id.*  In other words, *it was on Evanston* to include clearer language in its Policy if it wanted to avoid the term "occurrence" being ambiguous when applied to a mass shooting like the Parkland Shooting Incident.  Having failed to do so, Florida law is well-established that the Policy must be strictly construed against Evanston and liberally in favor of BSO.  *Ruderman*, 117 So. 3d at 949-50; *Macedo*, 228 So. 3d at 1113.[4]

Evanston's argument that the Court should consider extrinsic evidence before interpreting the Policy is also contrary to Florida's well-settled rules of insurance policy interpretation.  Because, as this Court already found, the term "occurrence" is ambiguous when applied to the facts of this case, "it **must** be construed against the insurer and in favor of coverage **without resort to consideration of extrinsic evidence**." *Ruderman*, 117 So. 3d at 945 (emphasis added).[5]  While Evanston argues that *Ruderman* is somehow "non-binding," the Eleventh Circuit disagrees.  As the Eleventh Circuit recently stated unequivocally in *Shiloh Christian Center v. Aspen Specialty Ins. Co.*, 65 F.4th 623 (11th Cir. 2023), "Florida law is clear that when an insurance policy is facially ambiguous, **the ambiguity is resolved in favor of coverage and against the insurer,**

---

not, as Evanston suggests, state that *contra proferentum* has no application where the insured has "participated in policy negotiations."  It stated that the rule "has no logical application where the insured is a sophisticated commercial entity *which has participated in drafting of the policy*." 616 F. Supp. 2d at 1264 (emphasis added).  Neither Evanston's Response nor its Answer ever alleges that BSO participated in the *drafting* of the Policy.

[4] While Evanston cites to numerous decisions from other jurisdictions to argue that *contra proferentum* should not apply, those out-of-state decisions are entirely irrelevant given controlling Florida law on this issue.

[5] Nearly all of the cases Evanston cites for the proposition that extrinsic evidence should be considered to decide intent do not involve a court's interpretation of an insurance policy, where the interpretive rules regarding ambiguous provisions are well-established.

*without regard to extrinsic evidence of the parties' supposed intentions or expectations*." *Id.* at 630-31 (emphasis added) (citing *Ruderman* and *Macedo*).

Consistent with this controlling law, evidence of the parties' intent, including BSO's supposed subjective intent, as well as evidence of BSO's supposed "sophistication" is irrelevant and "immaterial to a proper construction of the [P]olicy." *Atlantic Marine Fla., LLC*, 775 F.3d at 1277 n.25 (citing *Ruderman*). Therefore, no discovery is needed for the Court to interpret the Policy now as a matter of law.[6]

And, even though Evanston references certain other of its purported defenses on page 1 of its Response, it never actually addresses them or explains why they prevent entry of judgment on the pleadings. They don't. These defenses simply are inapplicable to the judicial declaration BSO seeks. For example, Evanston's defenses that BSO has not alleged that it has satisfied the SIR or the applicable deductible (Defenses 3, 7, 8, and 9) are irrelevant. BSO is not asking the Court to determine whether BSO has met the SIR; it is asking the Court to adjudicate *how many* SIRs must be met by BSO. Similarly, the fact that there have been no judgments entered against BSO related to the Parkland Shooting Incident (Defense 10) is irrelevant to the determination of whether BSO must exhaust one or multiple SIRs. Likewise, the application of sovereign immunity (Defenses 11 and 12) is irrelevant to the judicial declaration being sought by BSO. Therefore, none of Evanston's defenses can prevent the entry of judgment on the pleadings in favor of BSO.

## C. The Court Has Already Correctly Found the Policy Ambiguous

Evanston again argues that *Koikos v. Travelers Inc. Co.*, 849 So. 2d 263 (Fla. 2003), requires the Court to conclude that each shooting is a separate "occurrence" under the Policy and was not decided based on ambiguity. As this Court already determined, however, the Florida Supreme Court in *Koikos* reached the conclusion it did because it determined identical policy language to be ambiguous, and "construing the policy language to mean that each shooting was a separate occurrence was a construction determination in favor of the *insured* and against the insurer." (Order at p. 9) (emphasis in original). This Court already expressly rejected Evanston's argument that the Florida Supreme Court did not determine the term "occurrence" to be ambiguous

---

[6] Evanston admits that a true and correct copy of the Policy is attached to the Amended Complaint as Exhibit "C." [ECF No. 20 at ¶ 10; ECF No. 40 at ¶ 10]. The interpretation of the Policy is a question of law for the Court. *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985).

when applied to a mass shooting:[7]

> **The policy's definition of occurrence as applied to the facts of this case is susceptible to more than one reasonable interpretation.** "Occurrence" can reasonably be stated to refer to the entire shooting spree or to each separate shot that resulted in a separate injury to a separate victim. Accordingly, we construe the term "occurrence" in [the insurer's] policy in favor of the insured.

(Order at p. 10) (emphasis in original) (quoting *Koikos*, 849 So. 2d at 273).[8]

Altogether ignoring this language, Evanston bizarrely argues that "BSO cannot point to an alternate reasonable interpretation of the term 'occurrence' found by the Florida Supreme Court." (Response at p. 13). The Florida Supreme Court in *Koikos* expressly held that that the term could ***reasonably*** mean either the entire shooting spree (the interpretation advocated by the insurer) or each separate shot (the interpretation advocated by the insured). 849 So. 2d at 267.[9] Were this language not clear enough (and it is), the Florida Supreme Court subsequently confirmed in *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528 (Fla. 2005), that the holding in *Koikos* was based on this ambiguity. "[B]ecause the term 'occurrence' was ambiguous, we construed it in the insured's favor." *Taurus Holdings, Inc.*, 913 So. 2d at 534. Evanston asks this Court to ignore this ***explicit*** statement regarding *Koikos* because it is not helpful to Evanston.

Evanston likewise asks the Court to ignore the Florida Fifth District Court of Appeal's decision in *Maddox v. Fla. Farm Bureau Gen.*, 129 So. 3d 1179 (Fla. Dist. Ct. App. 2014)—again

---

[7] That the certified question in *Koikos* did not mention the term ambiguity is entirely beside the point. The court in *Koikos* answered the certified question the way it did *because of ambiguity*.

[8] Evanston elevates form over substance by observing that the *Koikos* court stated that it was reaching its "decision by looking at the language of the policy in a manner consistent with precedent regarding the construction of insurance policies in this State." (Response at p. 12) (quoting *Koikos*, 849 So. 2d at 273). The court in *Koikos* made that statement immediately after it made the pronouncement highlighted by this Court in its Order. And, indeed, one such precedent regarding the construction of insurance policies in Florida is that ambiguous policy provisions must be construed liberally in favor of the insured and strictly against the insurer. 849 So. 2d at 271 (citing *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)).

[9] As it did previously, Evanston again argues that the Parkland Shooting Incident constitutes multiple occurrences under the "cause theory" adopted in *Koikos*. But the Court already acknowledged that the Florida Supreme Court adopted the "cause theory" in *Koikos*. (Order at p. 9). The Court then concluded that the court in *Koikos* reached the holding it did because that was the construction favored by the insured. (*Id.*). Here, too, the Court already correctly reached the result favored by the insured, BSO.

because it reaches a conclusion contrary to the result Evanston wants—in arguing that no case applying Florida law since *Koikos* has found the term "occurrence" ambiguous.  (Response at p. 13).  But *Maddox* did find ambiguity.  As this Court already explained, *Maddox*, "expressly following *Koikos*, ruled that it must construe the policy's definition of occurrence, *which was ambiguous as to the facts of that case*, against the insurer and in favor of the insured."  (Order at p. 11) (emphasis added).  Indeed, as the court in *Maddox* explained in rejecting the insurer's argument that the "dog attack" constituted one occurrence, "the *Koikos* Court rejected a similar argument, concluding that there was no unambiguous language in the policy. . . ."  129 So. 3d at 1182.  "***Likewise, in this case it is reasonable to construe the occurrence as the entire dog attack or as each separate dog bite***."  *Id.* (emphasis added).[10]

Evanston next recycles the inapposite cases that found multiple occurrences under the specific facts of those cases.  This Court already thoroughly analyzed many of these decisions in its Order and found them "distinguishable."  (Order at pp. 12-15).[11]  The additional cases Evanston cites in its Response are also distinguishable.  In *Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.*, No. 6:07-cv-326-Orl-DAB, 2009 WL 1953649, (M.D. Fla. July 6, 2009), for example, "three separate hurricanes [that] struck the property at different points in time and caused separate and distinct damages," were found to be separate occurrences under the policy.  *Id.* at *1.  *Mid-*

---

[10] In *Dep't of Fin. Services v. Barnett*, 262 So. 2d 750 (Fla. Dist. Ct. App. 2018), the Fourth DCA agreed that the court in *Koikos* reached the conclusion it did because the term "occurrence" was ambiguous.  *Id.* at 754.

[11] *State Nat. Ins. Co. v. Lamberti*, 362 F. App. 76 (11th Cir. 2010) involved FTAA lawsuits brought by many plaintiffs, each of whom had their own separate interactions with *different* members of the BSO.  *Id.* at 81-82.   In that instance, because "each interaction with the individual officers is the cause of the claim, and is distinguishable in time and space," the Eleventh Circuit held that there was more than one occurrence. *Id.* at 82.  In *State Nat. Ins. Co. v. City of Miami*, No.08-22861-CIV-SEITZ, 2010 WL 11506250 (S.D. Fla. May 10, 2010), Judge Seitz erroneously concluded that the Florida Supreme Court in *Koikos* did not find this precise policy language ambiguous when applied to a multiple shooting incident.  *Id.* at *5, n.11.  This Court already determined that the Florida Supreme Court *did* find the term occurrence ambiguous in *Koikos*, as it explicitly confirmed in *Taurus Holdings*.  *Port Consolidated, Inc. v. Int'l Ins. Co. of Hannover, PLC*, 826 F. App. 822 (11th Cir. 2020), moreover, found each separate fuel theft from the insured by numerous *different* truck drivers over the span of *nearly a year* to be a separate occurrence under the policy.  *Id.* at 824, 829.  And, *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317 (11th Cir. 2005), found that *separate* criminal acts "separated by sufficient 'time and space'" constituted separate occurrences.  *Id.* at 1332.

*Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293 (S.D. Fla. 2010), found two separate occurrences where the insured did substantially different work on different parts of the building such that its work on each separate part of the building "set in motion a separate force distinguishable in space and time." *Id.* at 1348.  Similarly, in *Liberty Mut. Fire Ins. Co. v. State Farm Fla. Ins. Co.*, No. 20-12970, 2022 WL 1025164 (11th Cir. Apr. 6, 2022), multiple occurrences were found where the complaint alleged "four distinct groupings of misconduct" that were not "so temporally close to blend into a single 'occurrence.'"  *Id.* at *7.  Finally, in *Travelers Indem. Co. v. Garcia*, No. 20-14387, 2021 WL 2935425 (11th Cir. July 13, 2021), one occurrence was found where the insured "was involved in only one accident" giving rise to his injuries.  *Id.* at *2.  These cases are all distinguishable from a mass shooting that involved a single perpetrator.[12]

### III.   CONCLUSION

In sum, this Court has already correctly determined that "the term 'occurrence' within the meaning of the Policy is ambiguous as applied to the facts in this case, as it reasonably can be interpreted to mean either the entire shooting spree by Cruz or each shot he fired that resulted in separate injuries to a separate victim." (Order at p. 18).  "[U]nder Florida's well-settled principles of insurance policy interpretation," the Parkland Shooting Incident must be construed as a single "occurrence" under the Policy because that is the reasonable interpretation favored by BSO.  (*Id.*). The Court should therefore grant BSO's Motion and enter judgment in favor of BSO declaring that, as a matter of law, the Parkland Shooting Incident constitutes a single occurrence under the Policy, and that BSO is required to exhaust only a single SIR of $500,000.

---

[12] Evanston further argues that the Florida Supreme Court's sovereign immunity decisions are "inapposite" and that cases from other jurisdictions are "unhelpful."  But, as this Court already recognized, these decisions, including one stemming from the Parkland Shooting Incident, *further support* the conclusion (already announced in *Koikos*) that the term "occurrence" in the Policy is ambiguous when applied to a mass shooting.

Dated:  August 17, 2023.                Respectfully submitted,


                                        /s/ Jason S. Mazer_____

                                        Jason S. Mazer, Esq.
                                        Florida Bar No.  00149871
                                        Joshua R. Alhalel
                                        Florida Bar No.  0016320
                                        **Cimo Mazer Mark PLLC**
                                        255 Alhambra Plaza, Suite 1160
                                        Coral Gables, Florida  33134
                                        Telephone: (305) 374-6481
                                        jmazer@cmmlawgroup.com

                                        -and-

                                        David Lawrence Ferguson, Esq.
                                        Seth D. Haimovitch, Esq.
                                        **Kopelowitz Ostrow Ferguson Weiselberg Gilbert**
                                        One West Las Olas Boulevard, Suite 500

                                        Fort Lauderdale, Florida 33301
                                        Telephone: (954) 525-4100
                                        ferguson@kolawyers.com
                                        haimovitch@kolawyers.com
                                        9002577420@filings.docketbird.com
                                        nunez@kolawyers.com
                                        Chaparro@kolawyers.com
                                        fields@kolawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2023, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on parties listed in the below Service List via transmission of Notices of Electronic Filing generated by CM/ECF or in some other manner.

                                        _____/s/ Jason S. Mazer_____

## SERVICE LIST

David Lawrence Ferguson, Esq.
Seth D. Haimovitch, Esq.
**Kopelowitz Ostrow Ferguson Weiselberg Gilbert**
One West Las Olas Boulevard
Suite 500
Fort Lauderdale, FL  33301
Telephone:  (954) 525-4100
ferguson@kolawyers.com
haimovitch@kolawyers.com
9002577420@filings.docketbird.com
nunez@kolawyers.com
Chaparro@kolawyers.com
fields@kolawyers.com

*Co-Counsel for Plaintiff, Gregory Tony, in his official capacity as Sheriff of Broward County*

Kristin D. Perkins, Esq.
Jordan H. Lewis, Esq.
**Kennedys CMK, LLP**
1395 Brickell Avenue
Suite 610
Miami, FL  33131
Telephone:  (305) 371-1111
Kristen.Perkins@KennedysLaw.com
Jordan.Lewis@KennedysLaw.com
Tracy.Gowen@KennedysLaw.com

*Counsel for Defendant, Evanston Insurance Company*