**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 0:22-CV-62076-DIMITROULEAS/AUGUSTIN-BIRCH

**GREGORY TONY, in his official
capacity as Sheriff of Broward County,**

    Plaintiff,

v.

**EVANSTON INSURANCE COMPANY,**

    Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION TO QUASH SUBPOENAS AND/OR ISSUE A PROTECTIVE ORDER**

This cause comes before the Court on Plaintiff Sheriff Gregory Tony's Motion to Quash Subpoenas and/or Issue a Protective Order and Discovery Memorandum. DE 61; DE 57. Defendant Evanston Insurance Company filed a Response to the Discovery Memorandum, and Plaintiff filed a Reply. DE 58; DE 59. The Court held a hearing on the parties' discovery dispute on September 5, 2023, via video teleconference. The Court has carefully considered the parties' briefing, the arguments that counsel made during the hearing, and the record and is otherwise fully advised in the premises. For the reasons set forth below, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**.

                              **I.     BACKGROUND**

This is a declaratory judgment action in which Plaintiff seeks clarification as to insurance obligations for litigation arising from the February 2018 massacre at Marjory Stoneman Douglas High School in Parkland, Florida (the "Parkland Shooting Incident"). DE 20. The Broward Sheriff's Office's ("BSO") insurance policy from Defendant that was in effect at the time of the

Parkland Shooting Incident had a per occurrence Self-Insured Retention of $500,000. At issue in this action is what the word "occurrence" in the insurance policy means. Plaintiff contends that the entire Parkland Shooting Incident is a single occurrence, such that the BSO need only satisfy the $500,000 Self-Insured Retention once before there is insurance coverage. Defendant contends that each victim of the Parkland Shooting Incident constitutes a separate occurrence, such that the BSO must satisfy the $500,000 Self-Insured Retention separately for each victim before there is insurance coverage.

In an Order ruling on Defendant's Motion to Dismiss, the Honorable William P. Dimitrouleas, United States District Judge, determined that the meaning of the word "occurrence" in the insurance policy is ambiguous and that this ambiguity must be construed in Plaintiff's favor as the insured. DE 38. Judge Dimitrouleas therefore denied Defendant's request to dismiss this action for failure to state a claim. In an Order denying Defendant's subsequent Motion for Reconsideration, Judge Dimitrouleas reminded the parties that his ruling was made at the motion-to-dismiss stage of this litigation, that the Court had not yet addressed "[a]ny factual and legal issues" that Defendant's affirmative defenses might raise, and that the parties were "certainly entitled to develop the factual record in support of their positions." DE 49 at 3.

Defendant filed an Answer that raised several affirmative defenses. DE 40. Among the affirmative defenses, Defendant pled as affirmative defense #14: "To the extent any provisions are ambiguous, which Evanston denies, the doctrine of *contra proferentum* does not apply to BSO and/or the policy is not interpreted against Evanston or in favor of BSO."[1] *Id.* at 6.

Defendant propounded Subpoenas Duces Tecum for Deposition on the corporate representative of the BSO's insurance broker, Marsh & McLennan Agency, LLC. *See* DE 57-1.

---

[1] The doctrine of *contra proferentum* is "a canon of construction in contract law that counsels in favor of construing ambiguities in contract language against the drafter." *Allen v. Thomas*, 161 F.3d 667, 671 (11th Cir. 1998).

Further, Defendant prepared a list of "Areas of Inquiry" for the deposition of the BSO's corporate representative. *See* DE 57-2. Topics 7 through 9 on that list state:

> 7. Knowledge of prior litigation involving BSO and its insurance carriers, including the State National Litigation and/or the City of Miami Litigation. This request specifically seeks information related to the positions taken by BSO in the State National Litigation.
>
> 8. Knowledge of BSO's insurance/program prior to the issuance of the Evanston Policy, including policies issued by Lexington Insurance Company to BSO from 2010 to 2016. This includes, but is not limited to, information regarding the definition of "occurrence" (and any requested modifications thereto) in the policies.
>
> 9. Knowledge of BSO's application for insurance in 2016 in connection with the Evanston Policy, including:
>    a. Why BSO wanted to switch its insurance program to a new carrier;
>    b. Discussions with Marsh regarding the application for and procurement of the Evanston Policy;
>    c. Negotiations with Evanston;
>    d. Requests for specific forms and endorsements to be included in the Evanston Policy;
>    e. Requests for pricing from Evanston for self-insured retentions and deductibles at various levels.

*Id.* at 2-3.

In the discovery dispute now before the Court, Plaintiff seeks to quash the Subpoenas on the BSO's insurance broker and seeks a protective order precluding Defendant from inquiring into topics 7 through 9 during the deposition of the BSO's corporate representative. The parties are in agreement that a deposition of the insurance broker and topics 7 through 9 seek to obtain information concerning the BSO's level of understanding of, negotiations of, and general sophistication in dealing with insurance policies. Plaintiff argues that such information is irrelevant because the only issue in this action is the definition of the word "occurrence" in the relevant insurance policy; that word, if ambiguous, must be construed in his favor under the doctrine of *contra proferentum*, without resort to consideration of extrinsic evidence; and there is

3

no exception to that doctrine under Florida law if the insured is considered sophisticated. DE 57; DE 59. Defendant contends that Florida courts have recognized exceptions to the doctrine of *contra proferentum* where the insured "is a large entity like BSO with purchasing and negotiating power, and represented by a powerful broker like Marsh" and that Defendant is entitled to conduct discovery to support its affirmative defenses, such as affirmative defense #14.[2] DE 58.

## II.   ANALYSIS

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

The parties' arguments in briefing their discovery dispute center on whether there is an exception to the doctrine of *contra proferentum* under Florida law for insureds who possess some level of sophistication in dealing with insurance policies. In short, the parties dispute whether affirmative defense #14 is a meritorious affirmative defense as a matter of law. Whether an affirmative defense is meritorious is not a matter to be resolved as part of a discovery dispute. *See, e.g.*, *Props. of the Vills., Inc. v. Kranz*, No. 5:19-cv-647-Oc-30PRL, 2020 WL 6393834, at *3 (M.D. Fla. Nov. 2, 2020) ("[D]uring discovery the court is not required to examine the likelihood

---

[2] Defendant also asserts that Plaintiff's objections to the Subpoenas were untimely and therefore waived. DE 58 at 2. However, Plaintiff did timely object to the Subpoenas within 14 days of their service and before the date on which the insurance broker's deposition was scheduled to occur. *See* DE 59-1; Fed. R. Civ. P. 45(d)(2)(B) (requiring an objection to a subpoena to "be served before the earlier of the time specified for compliance or 14 days after the subpoena is served"). Plaintiff's objections were not waived.

of success or the merits of any claims or defenses, rather, the court must consider whether the information is relevant to the claims and defenses in the action, and then ask whether the proposed discovery is proportional to the needs of the case." (quotation marks omitted)); *Wachovia Fin. Servs., Inc. v. Birdman*, No. 09-81252-CIV, 2010 WL 11506642, at *2 (S.D. Fla. Oct. 25, 2010) ("Federal Rule of Civil Procedure 26(b)(1) allows discovery on any party's claims or defenses; there is no requirement that a party obtain a threshold determination of the merits of those claims before proceeding with discovery.").

The parties have briefed the issue of whether affirmative defense #14 is meritorious as part of a Motion for Judgment on the Pleadings. *See* DE 52 at 1-2, 5-11 ("Judgment on the pleadings is also not proper in this case as Evanston has asserted viable defenses to the Amended Complaint, including that BSO is not entitled to the automatic benefit of ambiguous terms. This is because BSO is a sophisticated insured with the ability to negotiate policy provisions on equal footing with the insurer. And BSO conducted such policy negotiations by itself and through its agent, Marsh, with respect to the Evanston Policy."); DE 53 at 2, 4-6 ("Evanston next argues that the doctrine of *contra proferentum* does not apply, notwithstanding this Court's prior—and correct—determination that it was required to interpret the ambiguous policy term in BSO's favor. Evanston's argument ignores well-settled Florida law holding that any ambiguity in insurance policy language must be liberally construed in favor of coverage and strictly against the insurer. Evanston's argument that the Court must consider extrinsic evidence before interpreting the Policy is simply contrary to binding Florida law." (emphasis, citation, and quotation marks omitted)). The Motion for Judgment on the Pleadings is currently pending before Judge Dimitrouleas. Until such time as Judge Dimitrouleas rules to the contrary, affirmative defense #14 remains an affirmative defense in this action. Defendant is entitled to conduct proportional discovery of

information relevant to that affirmative defense. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .").

As for relevancy, the information sought through the Subpoenas and topics 7 through 9 is relevant to affirmative defense #14. Plaintiff's argument to the contrary concerns topic 7, which asks about prior litigation including "the State National Litigation and/or the City of Miami Litigation." DE 57-1 at 2. Plaintiff asserts that Judge Dimitrouleas "already considered the State National Litigation in [his] Order denying Evanston's motion to dismiss and found it distinguishable." DE 57 at 4; *see also* DE 59 at 3 & n.1. Judge Dimitrouleas did determine that one case, *State National Insurance Co. v. Lamberti*, was factually distinguishable. DE 38 at 12-13 ("*Lamberti*, with various civil rights plaintiffs, each with their own separate interactions with separate law enforcement officers, is thus totally distinct on its facts from the case presented here."); *see State Nat'l Ins. Co. v. Lamberti*, 362 F. App'x 76 (11th Cir. 2010). Judge Dimitrouleas also questioned a ruling in a second case, *State National Insurance Co. v. City of Miami*. DE 38 at 13-14 ("However, in making this determination, the district court overlooked the Florida Supreme Court's determination and application of ambiguity in its *Koikos* opinion, where it had found the term 'occurrence' ambiguous as applied to the multiple shooting facts of that case and thus construed the term in favor of the insured."); *see State Nat'l Ins. Co. v. City of Mia.*, No. 08-22861-CIV, 2010 WL 11506250 (S.D. Fla. May 11, 2010), *aff'd*, 403 F. App'x 478 (11th Cir. 2010). Judge Dimitrouleas did not rule on the relevancy of either of these cases to the BSO's level of sophistication in dealing with insurance policies. Defendant had not yet pled any affirmative defenses at the time Judge Dimitrouleas issued his ruling on the Motion to Dismiss.

The information that Defendant is seeking is relevant to an affirmative defense that remains at issue in this case.

As for proportionality, Plaintiff's arguments that discovery of the information Defendant is seeking is disproportionate relate to topics 7 through 9.  First, Plaintiff asserts that preparing a witness to testify as to topics 7 through 9 will be costly and time consuming.  DE 57 at 4.  Considering the importance of the information sought in topics 7 through 9 to the merits of affirmative defense #14, the amount in controversy in this action,[3] and the parties' relative access to the information, discovery of the information is proportional to the needs of this case.  However, the Court will narrow the scope of topics 7 and 8 somewhat.  The Court narrows topic 7 to knowledge of prior litigation from calendar year 2008 forward involving the BSO and its insurance carriers.  The Court narrows topic 8 to knowledge of the BSO's insurance/program from calendar year 2008 forward.  The Court concludes that inquiry into the BSO's knowledge of events prior to the year 2008 is disproportionate to the needs of this case.

Second, Plaintiff contends that the information sought through topic 7 about positions the BSO took in prior litigation is a matter of public record.  *Id.*  However, "the fact that the information sought . . . [is] obtainable from another source is not a bar to discovery of relevant information."  *Jones v. Alta Colls., Inc.*, No. 1:08-CV-1027-CAM-RGV, 2009 WL 10665816, at *6 (N.D. Ga. Aug. 25, 2009) (quotation marks omitted).  Considering the parties' relative access to the information, inquiry into topic 7 during the deposition of the BSO's corporate representative is proportional to the needs of this case.  Having considered the factors in Rule 26(b)(1), discovery of the information that Defendant is seeking through the Subpoenas on the BSO's insurance broker

---

[3] Judge Dimitrouleas explained that, if Defendant's position on the meaning of the word "occurrence" were accepted, then the "BSO must incur tens of millions of dollars before being entitled to any coverage under the Policy."  DE 38 at 3.

and through topics 7 through 9, as narrowed in the prior paragraph, is proportional to the needs of this case.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff Sheriff Gregory Tony's Motion to Quash Subpoenas and/or Issue a Protective Order and Plaintiff's Discovery Memorandum [DE 61] is **GRANTED IN PART AND DENIED IN PART**.  The Court narrows the scope of topics 7 and 8 as explained in this Order but otherwise denies Plaintiff's request to quash Subpoenas and/or issue a protective order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 7th day of September, 2023.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE