UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case no. 22-cv-62076-WPD

GREGORY TONY, in his official
capacity as Sheriff of Broward County,

    Plaintiff,

v.

EVANSTON INSURANCE COMPANY,

    Defendant.
_____/

## OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Plaintiff Gregory Tony, in his official capacity as Sheriff of Broward County ("BSO" or "Plaintiff")'s Motion for Final Summary Judgment [DE 88] and Defendant Evanston Insurance Company ("Evanston" or "Defendant")'s Motion for Final Summary Judgment [DE 93]. The Court has carefully considered the Motions [DE's 88, 93], the Responses [DE's 102, 100] and Replies [DE's 103, 104], the statements of undisputed material facts [DE's 89, 92, 99, 101, 106] [1], and the evidence submitted in the record. The Court is otherwise fully advised in the premises.

**I.    Background**

On September 20, 2022, Plaintiff BSO filed a Complaint in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida against Defendant Evanston for Declaratory Judgment. *See* [DE 1-1]. The Complaint alleged that numerous lawsuits were filed against BSO

---

[1] The parties' statements of facts and their responses and replies thereto include various citations to portions of the record. Any citations in this Order to the statement of facts, response, and reply thereto should be construed as incorporating those citations to the record.

and other parties by the victims of the Parkland Shooting Incident (as defined in the Complaint). *See* [DE 1-1]. BSO's Complaint requested that the Court declare that the Parkland Shooting Incident was a single Occurrence, and thus, determine whether BSO must exhaust a single Self-Insured Retention of $500,000, or a Self-Insured Retention of $500,000 for each Plaintiff that filed a lawsuit. *See* [DE 1-1]. Defendant filed the Notice of Removal on November 8, 2022, alleging that there exists diversity jurisdiction under 28 U.S.C. § 1332, allowing removal pursuant to 28 U.S.C. § 1441. [DE 1]. Defendant moved to dismiss the state court complaint, *see* [DE 6], and Plaintiff filed an Amended Complaint, the operative pleading, on January 23, 2023. *See* [DE 20].

Prior to the February 14, 2018 horrific massacre perpetrated by Nikolas Cruz ("Cruz") on February 14, 2018, at Marjory Stoneman Douglas High School (the "Parkland Shooting Incident"), BSO purchased from Evanston Public Entities Policy No. MPEMID0002-16-01 with a policy period of October 1, 2017 to October 1, 2018 (the "Policy"). *See* [DE 20-3]. The Policy has a Self-Insured Retention ("SIR") of $500,000, with an each occurrence limit of liability of $2,500,000 and an aggregate limit of $5,000,000. *See* [DE 20-3] at p. 7. The Policy contains a "Defense Of Claim Or Suit" provision which provides that BSO has the duty to investigate and defend any claim or suit to which this insurance applies and BSO is responsible for the payment of any "claim expenses." All payments of "claim expenses" are to be made by BSO and applied toward the SIR. [D.E. 20-3, p. 31]. Additionally, Evanston has no duty to defend any claim or suit. *Id.*

The Policy further provides that the SIR "applies separately to each and every 'occurrence' and offense covered under this Coverage Part." *See* [DE 20-3] at p. 22. The Policy provides that Evanston "will pay 'ultimate net loss' in excess of the SIR that the Insured is

legally obligated to pay because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies." *See id.* The Policy in turn provides that this insurance applies to "bodily injury" "[c]aused by an 'occurrence' that takes place in the 'covered territory.'" *See* [DE 20-3] at p. 11. The term "Occurrence" is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* [DE 20-3] at p. 25. The term "accident" is not defined in the Policy. *See* [DE 20-3].

Following the February 14, 2018 Parkland Shooting Incident, numerous lawsuits were filed against BSO (and others) by the shooting victims and their families—two of which are attached to the Amended Complaint. *See* [DE's 20-1, 20-2]. The lawsuits generally allege that BSO, including its agent Scott Peterson ("Peterson")—the School Resource Officer on duty at the high school to protect teachers and students from threats, including those posed by active shooters like Cruz—were negligent in, among other things, failing to follow BSO's own policies and procedures by, inter alia, failing to radio a Code Red as soon as Peterson heard there was a viable active shooting threat on campus, which would have resulted in the immediate lockdown of all school buildings; failing to intercept Cruz before he entered Building 12; failing to immediately enter Building 12 and locate and neutralize Cruz; calling for a lock down after hearing shots fired, thereby preventing officers from entering Building 12 and engaging Cruz; and providing other officers with misinformation about Cruz's location, thereby preventing other officers from entering Building 12 to engage and kill Cruz. *See* [DE 20] at ¶ 8. The lawsuits further allege that, but for this negligence, none of the shootings would have taken place or, at the very least, some of the deaths and injuries would have been prevented. *See* [DE 20] ¶ 9.

Defendant Evanston took the position that each victim of the Parkland Shooting Incident constitutes a separate occurrence under the Policy such that the Self-Insured Retention of

$500,000 must be separately met by BSO for each victim or gunshot that did harm. In other words, according to Evanston, BSO must incur tens of millions of dollars before being entitled to any coverage under the Policy. BSO, on the other hand, contended that the Parkland Shooting Incident constitutes a single "occurrence," such that it must exhaust only a single Self-Insured Retention of $500,000 under the Policy before coverage is triggered. Given this bona fide interpretive dispute between the parties, BSO sought judicial declaratory relief to have the Court determine the parties' rights and obligations under the Policy with regard to this dispute. *See* [DE 20].

On February 6, 2023, Defendant Evanston filed a Motion to Dismiss and Motion to Strike, seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *See* [DE 21]. In the motion to dismiss, Evanston argued that BSO failed to state a cause of action against it because the Parkland Shooting Incident constituted more than one occurrence as a matter of law. *See id.* Alternatively, Defendant requested that the Court strike pursuant to Fed. R. Civ. P. 12(f) Plaintiff's claims for supplemental relief in its prayer for relief, as well as its claims for pre-judgment and post-judgment interest. *See id.* The Court held a hearing on Evanston's Motion to Dismiss and Motion to Strike on May 15, 2023. *See* [DE 36]. Upon a careful consideration of the parties' arguments at the hearing and in the record, the Court entered an Order on May 24, 2023. *See* [DE 38]. Therein, the Court denied Defendant Evanston's motion to dismiss for failure to state a claim on the grounds that the term "occurrence" is ambiguous in the context of the instant case, based on the allegations of the Amended Complaint. *See* [DE 38]. After a thorough analysis of the parties' arguments and the relevant caselaw, the Court concluded as follows:

> Based upon the foregoing, the term "occurrence" within the meaning of the Policy is ambiguous as applied to the facts in this case, as it reasonably can be

>interpreted to mean either the entire shooting spree by Cruz or each shot he fired that resulted in separate injuries to a separate victim. Applying *Koikos* and its progeny, because BSO favors the Parkland Shooting Incident to be a single "occurrence" under the Policy, that is the interpretation this Court adopts under Florida's well-settled principles of insurance policy interpretation, which require ambiguity in an insurance policy to be construed in favor of the insured. *See Koikos*, 849 So. 2d at 273; *Taurus*, 913 So. 2d at 534; *Maddox*, 129 So. 3d at 1182. Accordingly, the Court denies Defendant Evanston's motion to dismiss for failure to state a claim.

*See* [DE 38].[2]

After the Court denied Defendant Evanston's Motion to Dismiss, Evanston filed an Answer and Affirmative Defenses to the Amended Complaint, setting forth eighteen (18) purported affirmative defenses, some of which are affirmative defenses and others are merely denials. *See* [DE 40]. Defendant Evanston also moved for reconsideration of the Court's May 4, 2023 Order or for certification of interlocutory appeal, which the Court denied. *See* [DE's 44, 49].

Additionally, after the Court denied Defendant Evanston's Motion to Dismiss and Evanston filed its Answer and Affirmative Defenses, Plaintiff BSO filed a Motion for Judgment on the Pleadings [DE 48]. On September 9, 2023, the Court entered an Order Denying Plaintiff's Motion for Judgment on the Pleadings. *See* [DE 65]. Therein, the Court explained that it disagreed with the fundamental premise of Plaintiff's Motion, that the Court's ruling in this case in denying Evanston's motion to dismiss required the entry of a final judgment in favor of BSO at this stage of the case. Rather, the Court explained, Evanston was entitled to discovery on its affirmative defenses, and the opportunity to develop a factual record and prove its defenses. *See* [DE 65]. Accordingly, the case proceeding through discovery. On January 12, 2024, both

---

[2] The May 4, 2023 Order on Defendant Evanston's Motion to Dismiss and Motion to Strike [DE 38] is incorporated by reference herein. The Court assumes the reader's familiarity with that Order.

sides filed Motions for Summary Judgment, which are presently before the Court. *See* [DE's 88, 93].

## II. Standard of Review

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

**III.    Discussion**

Plaintiff BSO argues that it is entitled to summary judgment in its favor because (1) as the Court already held, the term "occurrence" within the meaning of the Policy is ambiguous as applied to the facts in this case, as it reasonably can be interpreted to mean either the entire shooting spree by Cruz or each shot he fired that resulted in separate injuries to a separate victim; (2) due to this ambiguity, and under Florida's well-settled principles of insurance policy interpretation, the Parkland Shooting Incident must be construed as a single occurrence under the Policy because that is the reasonable interpretation favored by the insured, BSO; and (3) none of Evanston's affirmative defenses can prevent the entry of final summary judgment in favor of BSO.  *See* [DE 88].

In contrast, Defendant Evanston argues that it is entitled to summary judgment in its favor because: (1) the Amended Complaint seeks an advisory opinion because there is not a proper justiciable controversy; (2) BSO has not demonstrated that it paid Annual Aggregate Deductible ("AAD") of $500,000 in judgments or settlements for the relevant Policy period, 2018, so as to trigger the Evanston Policy; (3) there is no ambiguity in the term occurrence in the Policy and the allegations of the Parkland Shooting constitute more than one occurrence; and (4) the Florida rule of contract construction that ambiguities must be construed in favor of the insured is not applicable to BSO, a sophisticated entity.

As explained below, the Court will **GRANT** Plaintiff BSO's motion for summary judgment and **DENY** Defendant Evanston's motion for summary judgment.

   **a.  Plaintiff's Declaratory Judgment Claim Presents a Justiciable Controversy**

"In a diversity jurisdiction case like this one, a court will apply federal law if the matter at hand is procedural, and will apply the law of the forum state if the matter is substantive."

*Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 880–81 (11th Cir. 2016). "Florida's Declaratory Judgment Act, found in Chapter 86 of the Florida Statutes, is a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts; it does not confer any substantive rights." *Id.*; *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, the legal standard for reviewing a declaratory judgment claim in a diversity jurisdiction action in federal court is exclusively under 28 U.S.C. § 2201. *See id.*

> The Federal Declaratory Judgment Act states that:
>
> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Thus, under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, a court may declare the rights and other legal relations of any interested party in the case of an actual controversy within its jurisdiction. "For a controversy to exist, 'the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Here, Evanston argues that there is no immediate, substantial controversy because BSO has not pleaded or otherwise shown that it incurred amounts that constitute "ultimate net loss" in excess of the SIR and the Annual Aggregate Deductible ("AAD") of $500,000, or that the lawsuits against it have resulted in a judgment for covered amounts in excess of the SIR. The

Court finds Evanston's arguments regarding whether this lawsuit is merely seeking an impermissible advisory opinion to be entirely without merit.

Defendant Evanston takes the position that each victim of the Parkland Shooting Incident constitutes a separate "occurrence" under the terms of the Policy such that the SIR of $500,000 must be separately met by BSO for each victim or gunshot that did harm. According to Evanston, BSO must incur tens of millions of dollars before being entitled to any coverage under the Policy or, alternatively, according to Evanston, because BSO will not face liability above the Fla. Stat. § 768.28 statutory cap per victim of $200,000/$300,000, the SIR can never be met as to the Parkland Shooting Incident, and coverage under the Evanston Policy can never be triggered as to the Parkland Shooting Incident. BSO, on the other hand, contends that the Parkland Shooting Incident constitutes a single "occurrence" under the Policy terms such that it must exhaust only a single SIR of $500,000 after exhausting the $500,000 AAD under the Policy before coverage is triggered. It is undisputed in the record that BSO has already exhausted the separate $500,000 AAD by payment of covered judgments or settlements during the applicable period for the Policy. *See* [DE 99] at ¶84; [DE 106] at ¶84. The Policy certainly can be triggered by the Parkland Shooting Incident; the Court rejects Evanston's contrived interpretations to the contrary that there is no circumstance where the Policy can be triggered. *See* [DE 93] at pp. 4-8.

The relevant question, which is ripe for declaratory judgment, involves the application of the SIR to the Parkland Shooting Incident in determining the coverage BSO is entitled to under the Policy, *i.e.*, whether the Parkland Shooting Incident constituted one "occurrence" under the Policy such that BSO must exhaust only a single SIR with respect to the Parkland Shooting Incident or whether the Parkland Shooting Incident constituted separate "occurrences" under the Policy, requiring the payment of a separate SIR for each gunshot/victim. Accordingly, this *bona*

*fide* present dispute between the parties regarding the parties' rights and obligations under the Policy with regard to what SIR must be exhausted as to the Parkland Shooting Incident before coverage under the Policy is triggered does not seek an impermissible advisory opinion, nor is the declaratory judgment sought purely hypothetical.

    **b. The Court Maintains its Prior Rulings that the Term "Occurrence" within the Meaning of the Policy is Ambiguous as Applied to the Parkland Shooting Incident**

The issue of whether the term "occurrence" in the Policy is susceptible to more than one reasonable interpretation with regard to the Parkland Shooting Incident has been extensively and intensively litigated in this case. In the Court's May 4, 2023 Order on Defendant Evanston's Motion to Dismiss and Motion to Strike [DE 38], which is fully incorporated by reference herein, the Court carefully considered the parties' oral and written arguments, analyzed relevant caselaw, and concluded that the term "occurrence" within the meaning of the Policy is ambiguous as applied to the facts in this case[3], as it reasonably can be interpreted to mean either the entire shooting spree by Cruz or each shot he fired that resulted in separate injuries to a separate victim. *See* [DE 38]. When the Court denied Evanston's motion for reconsideration or for certification of interlocutory appeal, the Court again considered and rejected Evanston's arguments that the term "occurrence" in the Policy is not ambiguous as applied here and that there are multiple "occurrences" to which separate SIR's apply. *See* [DE's 44, 49]. While Evanston correctly notes that the Court may consider its previous rulings at the summary

---

[3] Whether the contract's plain language is ambiguous is a matter of law. *Strama v. Union Fidelity Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001). Ambiguous language is that susceptible to more than one reasonable interpretation. *Fayad v. Clarendon Nat'l Ins. Co.,* 899 So. 2d 1082, 1086 (Fla. 2005). An undefined term is not necessarily ambiguous. *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." *Taurus Holdings, Inc. v. United States Fid. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (quoting Anderson, 756 So. 2d at 34).

judgment stage, the Court declines to do so here. Rather, for the reasons already articulated in the record, the Court maintains its prior rulings that the term "occurrence" within the meaning of the Policy is ambiguous as applied to the Parkland Shooting Incident.

### c. The Court Construes the Ambiguity as to "Occurrence" in the Policy in Favor of the Insured, BSO

Having determined that the term "occurrence" within the meaning of the Policy is ambiguous as applied to the Parkland Shooting Incident, the Court turns to the issue of whether to construe this ambiguous provision in the insurance Policy for purposes of this case in favor of the insurer, Evanston, or liberally in favor of coverage and the insured, BSO.

Plaintiff BSO urges the Court to apply Florida's well-settled principles of insurance policy interpretation to hold that the Parkland Shooting Incident must be construed as a single occurrence under the Policy because that is the reasonable interpretation favored by the insured, BSO. "[W]here the provisions of an insurance policy are at issue, any ambiguity which remains after reading each policy as a whole and endeavoring to give every provision its full meaning and operative effect must be liberally construed in favor of coverage and strictly against the insurer." *Washington Nat. Ins. Corp. v. Ruderman,* 117 So. 3d 943, 949–50 (Fla. 2013). "Ambiguous policy provisions . . . should be construed liberally in favor of coverage of the insured and strictly against the insurer." *Dickson v. Econ. Premier Assur. Co.*, 36 So. 3d 789, 790 (Fla. 5th DCA 2010). *See also Stuyvesant Ins. Co. v. Butler*, 314 So. 2d 567, 570 (Fla. 1975) (holding that insurance policies "should be construed so as to give effect to the intent of the parties and if uncertainty is present in a policy, it should be construed against the insurer and in favor of the insured."); *Koikos v. Travelers Ins. Co.*, 849 So. 2d 263 (Fla. 2003) (finding each shooting to be a separate occurrence because the definition of the term "occurrence" was ambiguous, and the policyholder in that case favored that interpretation to maximize coverage); *Taurus Holdings,*

*Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 534 (Fla. 2005) ("We answered the question in the affirmative, holding that the 'policy's definition of occurrence as applied to the facts of this case is susceptible to more than one reasonable interpretation. [*Koikos*] at 273. Because the term 'occurrence' was ambiguous, we construed it in the insured's favor. *Id.*"); *Maddox v. Fla. Farm Bureau Gen.*, 129 So. 3d 1179, 1182 (Fla. 5th DCA 2014) (ruling that it must construe the policy's definition of occurrence, which was ambiguous as to the facts in that case, against the insurer and in favor of the insured).

Evanston, in contrast, asserts for its fourteenth affirmative defense that "[t]o the extent any provisions are ambiguous, which Evanston denies, the doctrine of *contra proferentum* does not apply to BSO and/or the policy is not interpreted against Evanston or in favor of BSO." *See* [DE 40] at p. 6. In particular, Evanston argues that even if the term "occurrence" is ambiguous in this context, BSO is not entitled to construction of the term "occurrence" in its favor because BSO is a sophisticated insured that participated in the negotiation and drafting of the Policy, along with its broker, Marsh.  The Court disagrees with Evanston.  First, Evanston's arguments regarding BSO's supposed subjective intent and supposed sophistication relies almost exclusively on law from jurisdictions outside of Florida and, moreover, is contrary to Florida's well-settled rules of insurance policy interpretation. As recently as 2023 the Eleventh Circuit stated that "Florida law is clear that when an insurance policy is facially ambiguous, the ambiguity is resolved in favor of coverage and against the insurer, without regard to extrinsic evidence of the parties' supposed intentions or expectations." *Shiloh Christian Center v. Aspen Specialty Ins. Co.*, 65 F.4th 623, 30-31 (11th Cir. 2023). *See Washington Nat'l Ins. Co. v. Ruderman*, 117 So. 3d 943, 945 (Fla. 2013) (holding that where the policy language is ambiguous, "it must be construed against the insurer and in favor of coverage without resort to

consideration of extrinsic evidence."); *Gov't Employees Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017). To the extent Evanston grounds its specious position that under Florida law a court need not construe an ambiguous policy provision in an insurance policy against the insurer and in favor of coverage if the insured participated in preparing the policy on the non-binding decision in *RTG Furniture Corp. v. Indus. Risk Insurers*, 616 F. Supp. 2d 1258 (S.D. Fla. 2008), Evanston's reading of *RTG* is overly broad. "*RTG Furniture Corp.*, however, actually stands for the proposition that ambiguous insurance contracts should be construed against the drafter, without regard to extrinsic evidence, unless the insured prepared the language inserted into the policy." *Evanston Ins. Co. v. Whyte*, No. 10-61007-CIV, 2011 WL 13096633, at *5 (S.D. Fla. Oct. 17, 2011), *aff'd*, 472 F. App'x 904 (11th Cir. 2012). Further, it is undisputed that BSO did not draft or prepare the language at issue, the definition of "occurrence" used by Evanston in the Policy. *See* [DE 89] at ¶12[4]; [DE 101] at ¶12[5]. Finally, Evanston's argument that the Court should not construe the subject ambiguity of the term "occurrence" within the meaning of the Policy is ambiguous as applied to the Parkland Shooting Incident against the insurer Evanston because BSO did not request different language regarding the term "occurrence" than that used by Evanston in the Policy is meritless.

Accordingly, the Court rejects Evanston's fourteenth affirmative defense, applies Florida's well-settled rules of insurance policy interpretation, and resolves the ambiguity as to the term "occurrence" in the Policy in favor of coverage and the insured BSO and against the

---

[4] "BSO did not draft or participate in the drafting of the definition of the term "occurrence" used by Evanston in the Policy. (Greene Dec. at ¶ 7, EX. 1). Indeed, BSO was not involved at all in preparing the definition of "occurrence" used by Evanston in the Policy. (Greene Dec. at ¶ 7)." [DE 89] at ¶12.

[5] "Disputed. As set forth in ¶ 11, BSO directly and through Marsh participated in the negotiation and drafting of the Policy. Both Marsh and BSO reviewed and accepted the Policy [D.E. 92, ¶ 67], and BSO's Director of Risk Management, John Greene, admitted that the definition of "occurrence" in the Evanston Policy is "materially identical" to that contained in nearly every commercial general liability policy he had looked at in his career. [Green Dep. p. 39:6-17]." [DE 101] at ¶12.

insurer, Evanston. The Parkland Shooting Incident is thereby construed as a single "occurrence" under the Policy because that is the reasonable interpretation of the ambiguous term in favor of coverage and the insured BSO. *See Ruderman*, 117 So. 3d at 949-50.

### d. The Remainder of Evanston's Affirmative Defenses Do Not Preclude Entry of Summary Judgment in Favor of BSO

Defendant Evanston contends that the remainder of its eighteen (18) purported affirmative defenses, or BSO's alleged failure to address each asserted affirmative defense in its summary judgment motion, preclude the Court from granting BSO's summary judgment motion. The Court disagrees.

> Because Defendant bears the burden of proof on its affirmative defenses at trial, Defendant, as the nonmovant here, also "bears the initial burden of showing that the affirmative defense is applicable." *Special Purpose Accts. Receivable Co-op Corp. v. Prime One Cap. Co.*, 125 F. Supp. 2d 1093, 1099 (S.D. Fla. 2000) (citing *Blue Cross and Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990)); *id.* (citing *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1550–51 (11th Cir. 1990)). Upon such a showing, the burden then shifts to the plaintiff to show that the affirmative defense does not bar the plaintiff's claim. *Id.* (citing *Weitz*, 913 F.2d at n. 13 (holding that "[o]nce a defendant shows that the applicable statute of limitations bars the claim, the burden shifts to the plaintiff to demonstrate that an exception or tolling provision applies".)). But "a defendant may not defeat summary judgment simply by alleging affirmative defenses." *United States v. Tubbs*, No. 19-CV-80553-Civ-Middlebrooks/Brannon, 2019 WL 7376706, *2 (S.D. Fla. Nov. 22, 2019).

*Baptist Coll. of Fla., Inc. v. Church Mut. Ins. Co., SI*, No. 5:22CV158-MW/MJF, 2023 WL 4358781, at *5 (N.D. Fla. Mar. 7, 2023).

Here, Defendant Evanston's response to BSO's summary judgment motion fails to show the applicability of most its affirmative defenses to the judicial declaration BSO seeks, determining whether each victim of the Parkland Shooting Incident constitutes a separate "occurrence" under the Policy such that the SIR must be separately met by BSO for each victim or gunshot that did harm or whether the Parkland Shooting Incident constitutes a single

"occurrence," such that BSO must exhaust only a single SIR under the Policy before coverage is triggered. Furthermore, to the extent that Evanston does demonstrate the arguable applicability of certain of its affirmative defenses, BSO has met its burden to show that the affirmative defense does not bar BSO's claim for the judicial declaration it seeks here. Moreover, the Court agrees with BSO that none of Evanston's other "affirmative defenses," *see* [DE 40] at pp. 4-6, most of which are not even affirmative defenses, prevent the entry of final summary judgment in favor of BSO with regard to the declaration it seeks that the Parkland Shooting Incident constitutes a single occurrence under the Policy and that BSO is required to exhaust only a single SIR of $500,000 under the Policy.

First, Defendant's Evanston's 1st ("The Amended Complaint fails to state a claim upon which relief may be granted"); 2nd ("The Amended Complaint contains no factual allegations of harm or damage, and therefore, purely seeks an advisory opinion[6] from this Court."); 3rd ("BSO has failed to plead that it has satisfied any SIR applicable to the Parkland Shooting Incident"); 4th ("BSO's recovery, if any, is limited to the terms, conditions and provisions of the Policy, including all applicable SIRs and deductibles."); 5th ("The Parkland Shooting Incident constitutes more than one occurrence under the Evanston commercial general liability excess policy."); 6th ("BSO is required to satisfy more than one SIR under the Evanston excess policy in connection with the Parkland Shooting Incident."); 9th ("BSO has failed to plead that it has satisfied the applicable deductible and Evanston has no obligation to pay 'ultimate net loss' under the Policy unless and until the applicable deductible is satisfied."); 13th ("The subject Policy, including the term "Occurrence," is not ambiguous, and should be interpreted according to the plain terms of the contract."); 15th ("BSO cannot assert a claim for pre-judgment or post-judgment interest, as

---

[6] The issue of whether this case seeks an improper advisory opinion is discussed and rejected *supra*.

these claims have been stricken by Order of this Court"); 16th ("BSO's claims for attorneys' fees must fail, and/or are limited by the passage of Florida's tort reform bill HB 837 on March 24, 2023."); and 18th ("BSO's claims for supplemental relief have not been properly pleaded.") affirmative defenses are not affirmative defenses at all, but rather are merely denials. A defense that denies an allegation in the plaintiff's complaint also is not an affirmative defense. *Perlman v. Wells Fargo Bank*, N.A., No. 10-81612-CV, 2014 WL 4449602, at *2 (S.D. Fla. Sept. 10, 2014). Pointing out a defect in plaintiff's *prima facie* case – which these affirmative defenses do – is not an affirmative defense. *In re Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988); *Nature's Prod., Inc. v. Natrol, Inc.*, No. 11-62409-CIV, 2012 WL 12844708, at *2 (S.D. Fla. Feb. 15, 2012); *Vallesillo v. Remaca Truck Repairs*, No. 09–80714, 2009 WL 4807397, at *4 (S. D. Fla. Dec. 4, 2009).

Next, Defendant's Evanston's 7th ("Evanston has no obligation under the Policy to pay 'ultimate net loss' unless and until the SIR is satisfied with respect to each occurrence.") and 8th ("Evanston has no obligation to pay 'claim expenses' unless it is obligated to pay 'ultimate net loss' in excess of the SIR.") affirmative defenses are irrelevant to the judicial declaration BSO seeks regarding whether the Parkland Shooting Incident constitutes a single "occurrence" under the Policy or whether each victim of the Parkland Shooting Incident constitutes a separate "occurrence" under the Policy, such that BSO must exhaust one or multiple SIRs with regard to the Parkland Shooting Incident. Defendant Evanston did not file its own counterclaim for declaratory judgment and it cannot seek one here at this juncture. Likewise, the Court finds that the fact that there have been no judgments entered against BSO related to the Parkland Shooting Incident, *see* 10th ("There is no judgment against BSO and Evanston is not aware of and did not consent to any settlement against BSO arising out of the Parkland Shooting Incident; therefore

Evanston has no obligation to pay any 'ultimate net loss' under the Policy."), the application of sovereign immunity, *see* 11th ("BSO is immune from liability for the Parkland Shooting pursuant to Section 768.28, Florida Statutes, therefore Evanston will have no obligation to indemnify BSO for any judgment or settlement, or 'ultimate net loss'") and 12th ("As a condition to the Evanston Policy, Evanston will not waive any governmental immunity of BSO."), and set-off, *see* 17th ("To the extent BSO is entitled to any damages in connection with the allegations made in the Amended Complaint, any such damages recoverable by BSO are to be set-off by collateral sources received.") are irrelevant to the judicial declaration being sought in this action by BSO.

Accordingly, the Court rejects Defendant Evanston's argument that the remainder of its asserted affirmative defenses preclude the entry of summary judgment in favor of BSO.

## IV. Conclusion

Based on the foregoing, Plaintiff BSO is entitled to summary judgment in its favor declaring that, as a matter of law, the Parkland Shooting Incident constitutes a single "occurrence" under the Policy and that BSO is required to exhaust only a single SIR of $500,000 under the Policy. Evanston's motion for summary judgment is due to be denied.

It is therefore **ORDERED AND ADJUDGED** as follows:

1. Plaintiff BSO's Motion for Final Summary Judgment [DE 88] is **GRANTED**;
2. Defendant Evanston's Motion for Final Summary Judgment [DE 93] is **DENIED**;
3. Pursuant to Fed. R. Civ. P. 58(a), the Court will enter a separate final judgment.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 20th day of March, 2024.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:

Counsel of record