UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:22-CV-62076-DIMITROULEAS/AUGUSTIN-BIRCH

**GREGORY TONY, in his official
capacity as Sheriff of Broward County,**

    Plaintiff,

v.

**EVANSTON INSURANCE COMPANY,**

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS**

    The Honorable William P. Dimitrouleas, United States District Judge, referred this matter to the undersigned United States Magistrate Judge for appropriate disposition or report and recommendation on Plaintiff's Motion for Attorneys' Fees and Non-Taxable Costs. DE 121; DE 122. The Motion is fully briefed at docket entries 121, 123, and 124. The Court has carefully considered the briefing and the record and is otherwise fully advised in the premises. For the reasons set forth below, the Court recommends that the Motion be **GRANTED**.

**I.      Background**

    This case involves an insurance dispute arising from the February 2018 massacre at Marjory Stoneman Douglas High School in Parkland, Florida ("Parkland Shooting Incident") and the numerous resulting lawsuits that the shooting victims and/or their families filed against the Broward Sheriff's Office ("BSO"), among other defendants. The BSO's insurance policy from Defendant Evanston Insurance Company that was in effect at the time of the Parkland Shooting Incident has a per occurrence Self-Insured Retention ("SIR") of $500,000. DE 20-3 at 7–9, 22.

Under the insurance policy, Defendant has no obligation to pay any ultimate net loss until the BSO fully exhausts the SIR, with ultimate net loss being "the total amount of damages and claim expenses, including any attorney fees awarded in favor of third parties that the [BSO] is legally liable to pay because of bodily injury, property damage or personal and advertising injury." *Id.* at 22, 27 (quotation marks omitted).  Plaintiff Gregory Tony, in his official capacity as Sheriff of Broward County, filed this lawsuit seeking a judgment declaring that the Parkland Shooting Incident constituted a single occurrence under the insurance policy, such that the BSO only needs to exhaust the $500,000 SIR once before there is insurance coverage for the lawsuits arising from the Parkland Shooting Incident.  DE 20 at 4–5.

On summary judgment, Judge Dimitrouleas ruled that the meaning of the word "occurrence" as used in the insurance policy is ambiguous as applied to the Parkland Shooting Incident, that the ambiguity should be resolved in the BSO's favor as the insured, and that the Parkland Shooting Incident constituted a single occurrence under the insurance policy.  DE 110 at 11, 13–14.  Judge Dimitrouleas entered final judgment in Plaintiff's favor and declared that the BSO must exhaust the $500,000 SIR once before there is insurance coverage for the Parkland Shooting Incident.  DE 111.  Defendant has appealed that judgment.  DE 114.

Plaintiff now moves for an award of attorneys' fees and non-taxable costs.  DE 121.  The parties dispute Plaintiff's entitlement to fees and costs under Florida law.  The parties do not submit to the Court a dispute over the amount of fees and costs.  They "have reached a compromise with respect to the amount recoverable in the event the Court rules in favor of" Plaintiff as to entitlement.  *Id.* at 1; *see also* DE 123 at 10 ("Evanston and BSO have already met, conferred, and agreed to an amount of attorney's fees and non-taxable costs in the unlikely event this Court rules in BSO's favor on entitlement.").

## II. Analysis

The BSO's insurance policy with Defendant was a policy issued under Florida's surplus lines laws.[1] DE 20-3 at 2. Under a now-repealed Florida statute:

> Except as provided in subsection (3) [concerning a suit arising under a residential or commercial property insurance policy], upon the rendition of a judgment or decree by any court of this state against a surplus lines insurer in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer on or after the effective date of this act, the trial court, or, if the insured or beneficiary prevails on appeal, the appellate court, shall adjudge or decree against the insurer in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the lawsuit for which recovery is awarded.

Fla. Stat. § 626.9373(1) (2022). A second now-repealed Florida statute containing the same provision for fees or compensation applied to non-surplus line insurers. *Id.* § 627.428(1) (2022); *see also id.* § 626.913(4) (stating that "the provisions of chapter 627 do not apply to surplus lines insurance"). Section 626.9373 applies to surplus line insurers whereas section 627.428 applies generically to insurers, but the two statutes are nearly identical, and courts apply them in the same way. *Capitol Specialty Ins. Corp. v. Ortiz*, No. 17-23329-Civ, 2019 WL 383868, at *3 (S.D. Fla. Jan. 15, 2019), *report and recommendation adopted sub nom. Capitol Specialty Ins. Corp. v. Ortiz ex rel. Corona*, 2019 WL 367916 (S.D. Fla. Jan. 30, 2019).

The Florida Legislature repealed sections 626.9373 and 627.428 on March 24, 2023. 2023 Fla. Sess. Law Serv. Ch. 2023-15, Secs. 10, 11. However, the sections still apply in cases filed before the date of repeal. *Id.* Sec. 30 ("Except as otherwise expressly provided in this act, this act shall apply to causes of action filed after the effective date of this act."); *LM Gen. Ins. Co. v. Blackwell*, No. 8:22-cv-1750, 2024 WL 1283694, at *2 n.2 (M.D. Fla. Mar. 26, 2024) ("Although the Florida Legislature repealed section 627.428 in March 2023, the repeal delineates

---

[1] A surplus line insurer is an insurer that must meet certain statutory requirements to offer insurance coverage in the State of Florida. *E.g.,* Fla. Stat. §§ 626.913(2), .915.

that it only applies to cases filed after the March 2023 effective date."); *Villamar v. Lexington Ins. Co.*, No. 1:23-cv-20325, 2023 WL 11799597, at *1 n.2 (S.D. Fla. Sept. 28, 2023) ("Because Villamar's Complaint was filed prior to § 627.428 being repealed, the Court will discuss entitlement below.").

Plaintiff filed this case in state court in September 2022, before the date of repeal, and therefore Plaintiff could be entitled to fees and costs under section 626.9373 despite the repeal. DE 1-1 at 3. Furthermore, Defendant does not contend that Plaintiff cannot receive fees and costs under section 626.9373 because it was repealed. DE 123 at 1 n.2 ("For purposes of this opposition, Evanston is not taking the position that the repeal applies retroactively; however, Evanston submits that the repeal of these laws demonstrates that an award of fees under these circumstances is disfavored in Florida.").

Turning to the merits of Defendant's opposition to Plaintiff's entitlement to fees and costs, Defendant asserts that an insured is not entitled to fees and costs under section 626.9373 or 627.428 unless the insurer denied insurance coverage or otherwise withheld insurance benefits before the insured filed the lawsuit in which the insured received judgment. *Id.* at 5–6 ("In third-party coverage actions, Florida courts have emphasized that an insurer must unequivocally deny coverage for a liability claim before an insured is potentially entitled to attorney's fees under Florida's former fee shifting statutes.");[2] *id.* at 8 ("[A] fee award under Fla. Stat. § 627.428 or § 626.9373 requires an incorrect denial of coverage or a wrongful withholding of policy benefits."). Defendant cites caselaw that supports a proposition that an insurer must have denied

---

[2] Defendant draws a distinction between first-party insurance coverage lawsuits and third-party insurance coverage lawsuits such as this one. DE 123 at 5–6. Defendant does not argue that sections 626.9373 and 627.428 do not apply in third-party insurance coverage lawsuits and does not cite any authority for such a proposition. Defendant instead argues that the distinction between first- and third-party insurance coverage lawsuits is meaningful because, "[i]n third-party coverage actions, Florida courts have emphasized that an insurer must unequivocally deny coverage for a liability claim before an insured is potentially entitled to attorney's fees under Florida's former fee shifting statutes." *Id.*

4

insurance benefits before an insured may recover fees and costs under section 626.9373 or 627.428. *E.g., J.P.F.D. Inv. Corp. v. United Specialty Ins. Co.*, 769 F. App'x 698, 705–06 (11th Cir. 2019) (stating that, under Florida caselaw, "to warrant attorney's fees under § 627.428, there must be (1) a denial of benefits under the policy (2) that is ultimately shown to be incorrect" and that "where an insurance company has not incorrectly denied benefits under the policy, an award of attorney's fees under § 627.428 is unwarranted"); *Nix v. Kinsale Ins. Co.*, 540 F. Supp. 3d 1089, 1092 (N.D. Fla. 2021) (explaining that the "insured is entitled to attorney's fees only if the insurer incorrectly denies benefits due to the insured under the insurance policy"); *Johnson v. Omega Ins. Co.*, 200 So. 3d 1207, 1219 (Fla. 2016) ("Section 627.428 provides that an incorrect denial of benefits, followed by a judgment or its equivalent of payment in favor of the insured, is sufficient for an insured to recover attorney's fees.").

Defendant maintains that it never denied insurance benefits for the lawsuits arising out of the Parkland Shooting Incident. DE 123 at 2 (asserting that "there is no evidence or allegation that Evanston denied or threatened to deny liability coverage for claims arising out of the Parkland shooting"); *id.* at 9 ("Evanston has not denied or threatened to deny coverage for any claims related to the Parkland shooting."). Defendant asserts that, prior to Plaintiff filing this lawsuit, it merely expressed its preliminary opinion or position that each victim of the Parkland Shooting Incident constituted a separate occurrence. *Id.* at 2 ("BSO merely asked Evanston to provide its position on the number of occurrences potentially implicated by the Parkland shooting. Evanston sent two reservation of rights letters explaining that based on Florida law, the incident appeared to involve multiple occurrences. BSO then filed this lawsuit. **That is all that occurred prior to BSO filing suit.**" (emphasis in original)); *id.* at 3 ("Evanston again expressed its opinion that each victim in the Parkland shooting represents a separate 'occurrence' under the Policy, **but did not** deny

5

coverage for any claims arising out of the shooting, nor did it state that it intended to deny coverage." (emphasis in original) (alteration and quotation marks omitted)).

Based on the parties' pre-suit communications, Defendant is incorrect that it never denied insurance benefits for the lawsuits arising out of the Parkland Shooting Incident. Before Plaintiff filed this lawsuit, Defendant sent the BSO two reservation-of-rights letters that may be construed as merely expressing a preliminary opinion about insurance coverage. However, following those letters, but also before Plaintiff filed this lawsuit, Defendant sent the BSO a third letter in which it denied insurance benefits until the BSO exhausts the $500,000 SIR at least for each plaintiff victim in the lawsuits arising from the Parkland Shooting Incident and possibly for each separate gunshot that caused injury.

The first reservation-of-rights letter from Defendant's counsel to the BSO is dated March 9, 2018. DE 123-1 at 1. In that letter, counsel stated that "[t]o our knowledge, no claims have been asserted against [the BSO] or its employees" but that the BSO "asked us to opine on whether [the Parkland Shooting Incident] potentially constitutes one incident or multiple incidents under the Policy." *Id.* Counsel explained that it was "not possible to determine with certainty which coverage potentially applies to this matter because no claim has been asserted against [the BSO] or any other insured under the Policy" but that "our view is that each victim in the Parkland shooting would represent a separate 'occurrence' under the Policy." *Id.* at 1–2. Counsel noted that "our opinions regarding the number of occurrences or offenses at issue are necessarily preliminary and are based on our understanding of what a future claim or lawsuit might allege as well as our interpretation of current Florida case law" and "reserve[d] the right to alter our position based on the allegations actually made in any future claim or lawsuit." *Id.* at 3 (emphasis omitted).

6

The second reservation-of-rights letter from Defendant's counsel to the BSO is dated April 23, 2019. DE 123-2 at 1. In that letter, counsel stated that there was "a lawsuit filed . . . against the [BSO]" arising out of the Parkland Shooting Incident. *Id.* Counsel explained that it was Defendant's "opinion that each victim in the Parkland shooting represents a separate 'occurrence' under the Policy" and that the filed lawsuit was "subject to the $500,000 per occurrence self-insured retention." *Id.* at 3. Counsel concluded that "[o]ur investigation is ongoing and this letter is based on presently available information" and "reserve[d] the right to supplement this coverage position and assert additional grounds for disclaimer of coverage if new or additional information becomes available." *Id.*

On August 6, 2020, the BSO sent Defendant's counsel a letter explaining that it "already expended $750,000 in regards to the Parkland Shooting," that it would exhaust $1,000,000 "in the very near future," and that it expected Defendant to "cover all future costs, attorney fees, and expenses related to the defense." DE 124-1 at 1. Defendant's counsel sent the BSO a third letter, dated September 28, 2020, in response to that August 6 letter. DE 124-2 at 1.

The third letter from Defendant's counsel contains a claim number and reflects that, at the time, there were multiple "lawsuits filed against [the BSO] by the victims of" the Parkland Shooting Incident. *Id.* Counsel stated that Defendant "maintains its position that each gunshot that resulted in injury or death to a victim of the shooting constitutes a separate 'occurrence' under the Policy" and that "the Policy's $500,000 [SIR] applies, at the very least, to each plaintiff victim in the lawsuits related to the shooting." *Id.* The letter reviewed caselaw that, according to counsel, "compel[s] the conclusion that under Florida law, in cases involving shooting incidents, each separate shot resulting in a separate injury to an individual victim will constitute a separate occurrence under an insurance policy." *Id.* at 2–3. Counsel concluded the letter as follows:

7

>    Applying the Policy to the principle established by Florida law as set forth above results in the requirement that one or more SIRs be exhausted for the claims of each victim before the . . . Policy can be called upon to provide coverage. Section III. of the General Liability Coverage Part provides that the SIR applies separately to each and every "occurrence" and offense covered under this Coverage Part. [Defendant] has no obligation to pay "ultimate net loss" on behalf of [the BSO] until [the BSO] pays the full amount of the SIR for each "occurrence" and the full amount of the Annual Aggregate Deductible of $500,000 scheduled on the Policy.
>
>    In accordance with the foregoing, as each shooting victim's claim against [the BSO] is at least one separate "occurrence" under the Policy, the $500,000 SIR must be separately exhausted as to each "occurrence." Consequently, [Defendant] has no obligation to pay "ultimate net loss" unless and until the $500,000 SIR is exhausted for each occurrence (i.e., at least every claim/suit) and the Annual Aggregate Deductible has been satisfied.

*Id.* at 4.

Thus, even if Defendant previously only expressed a preliminary opinion about insurance coverage, in the September 28 letter Defendant denied insurance benefits until the BSO exhausts the $500,000 SIR at least for each plaintiff victim in the lawsuits arising from the Parkland Shooting Incident and possibly for each separate gunshot that caused injury. *Id.* (stating that the insurance policy requires "that one or more SIRs be exhausted for the claims of each victim before the . . . Policy can be called upon to provide coverage"); *id.* (stating that Defendant "has no obligation to pay 'ultimate net loss' on behalf of [the BSO] until [the BSO] pays the full amount of the SIR for each 'occurrence'" and "has no obligation to pay 'ultimate net loss' unless and until the $500,000 SIR is exhausted for each occurrence (i.e., at least every claim/suit)"). Plaintiff filed this lawsuit in state court approximately two years later. DE 1-1 at 3. Judge Dimitrouleas ultimately entered final judgment for Plaintiff, ruling that Defendant was incorrect to deny insurance benefits until the BSO exhausts more than one $500,000 SIR for the Parkland Shooting Incident. DE 111. Plaintiff is entitled to attorneys' fees and costs under Fla. Stat. § 626.9373(1).

### III.  Recommendation

For the foregoing reasons, the Court recommends that Plaintiff's Motion for Attorneys' Fees and Non-Taxable Costs [DE 121] be **GRANTED**.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 20th day of August, 2024.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE